**John SCHMIDT, as personal representative of the Estate of Irene M. Schneider, Joley Dee Schmidt, Kelley Sue Walker and Shawn Leann Walker, heirs at law of Irene M. Schneider, Yvonne Michelle Martin, as personal representative of the Estate of Dudley O. Schneider, Kirk Schneider, heir at law of Dudley O. Schneider, Earl W. Carlson, Jr., as personal representative of the Estates of Earl W. Carlson and Doris L. Carlson, Earl W. Carlson, Jr., Gary Lee Carlson and Kathleen A. Schaal, heirs at law of Earl W. Carlson and Doris L. Carlson, Plaintiffs,**

v.

**FORD MOTOR COMPANY, a Delaware corporation, Defendant.**

**Civ. A. No. 85–K–982.**

United States District Court, D. Colorado.

Oct. 14, 1986.

Charles J. Haase, Colorado Springs, Colo., for plaintiffs.

Peter F. Jones, Hall & Evans, Denver, Colo., for defendant.

## ORDER

KANE, District Judge.

This is a products liability diversity action brought by the survivors and estates of Dudley and Irene Schneider against Ford. Plaintiffs allege a flaw in the braking system of the 1979 Mercury Capri in which the decedents were driving when they fatally crashed on April 11, 1983.

The instant motion to dismiss involves the decedents' daughter, Shawn Walker, who is a plaintiff. She removed the wheels and tires from the Capri in April, 1984, put about 1,500 miles on the tires with her pickup, replaced the wheels and tires on the Capri in March of 1985 and subsequently covered up these acts. By March, 1985 the tires incident was known to plaintiffs' counsel and their accident reconstruction expert Smith. Thereafter, Smith saw that the tires had been incorrectly replaced by Walker, so he took them off again and put them where he thought they should be.

Defendant alleges that Haase violated Rule 11 in signing the initial complaint and objections to the interrogatories. Defendant asserts that Shawn Walker gave incomplete, incorrect or evasive answers to interrogatories and in deposition. Also asserted is that expert Smith submitted an incomplete, dishonest and misleading expert's report and lied in depositions and in informal conversations with defendant's expert

Smith. Tampering with evidence is also alleged, but not supported.

Defendant seeks dismissal as a sanction either under Rule 37 or pursuant to the court's inherent authority. It also seeks a motion for summary judgment, stating, in effect, that because of the removal of the tires and certain chain of custody problems, plaintiffs, as a matter of law, cannot prove their case.

There is also a sanctions motion pending before the United States Magistrate which is denied without prejudice to renew in view of the other rulings in this opinion and order. The reference to the Magistrate is hereby recalled.

## MOTION TO DISMISS

### A. Rule 37

Rule 37(b) allows for dismissal as a sanction for failing to abide by discovery orders of a court. In this case, no court order was violated. It is failure to respond properly to discovery *requests* which are at issue. Rule (d) incorporates the dismissal sanction of 37(b) in certain instances. The only instance applicable here is where "a party ... fails ... (2) to serve answers or objections to interrogatories."

Interrogatory No. 56 stated:

Please give the dates, circumstances, and identity of all parts and components that were ever removed, replaced or added to the product (automobile) from the date of manufacture to the date of the answers to these interrogatories. With respect to such additional parts, please state whether or not these parts and components were manufactured by the defendant.

On September 4, 1985 plaintiffs, through Shawn Walker with the assistance of her attorney, responded by saying:

See service records available to plaintiffs.

The service records contained absolutely no reference to the removal, use on another car and return of the tires. Under Rule 37(a)(3), an evasive or incomplete answer is treated as a failure to answer. As noted above, a failure to answer an interrogatory is grounds for dismissal. That such an answer as that given is evasive cannot be gainsaid.

The interrogatories were amended in early February, 1986, after it was discovered by plaintiffs that the tires had been used. Plaintiff now argues that when he read interrogatory number 56, knowing it was a "canned" products liability interrogatory, he figured defendant was talking about the "alteration" defense to a products liability action. Haase allegedly read the question in that vein, looking at the period between purchase and crash. He denies intentionally trying to mislead the defendants with regard to the tires. His other conduct in evading discovery efforts by defendant to ascertain true facts does not lend credence to this assertion.

Notwithstanding counsel's claim of an innocent mindset, interrogatory 56 clearly asks if any part of the car had been removed. The answer originally given was that it had not. While it is within my discretion to dismiss the case for this flawed answer, I do not think that such a sanction would be just. There is, as will be seen, a pattern of obfuscation perpetrated by the attorney and expert. Further, I discern no irremediable prejudice to defendant other than having to waste time and money to get to the bottom of the tires episode.

Defendant's Rule 11 argument does not apply. Apparently, the attorney never signed the answers to the interrogatories, but only accompanying objections.

## INHERENT POWER TO DISMISS

Defendants argue that disregard of a discovery *request* may support an order of dismissal under Rule 37. As noted above, this is only true with respect to, in this case, the bad interrogatory. The incomplete experts report, the alleged informal and deposition lies, and tampering, however, are arguably grounds for dismissal pursuant to inherent judicial authority.

Defendant alleges that in a December, 1985 deposition Walker denied taking any-

thing off of the car, citing from the deposition:

Question: Did you take any parts off the car or do anything to it?

Answer: No.

Defendant took this out of context. Reading the preceding and following questions, it is clear that the inquirer was referring to the time between the crash and its being picked up from a local body shop by Shawn Walker. During *that* period Walker had not taken any parts off the car. Walker did not lie in that instance.

The December deposition of plaintiffs' expert James Lee Smith is more troubling, however, Plaintiffs' counsel and Smith denied that Smith ever lied, but the deposition transcript indicates otherwise. Illustrative of a pattern of dissimulation is the following colloquy:

Question: Between the time that the investigating highway patrolman took the black and white photographs at the scene of the accident, *do you know of any changes in the condition in any part of the car* that were made prior to the time that you saw the car in March of '85?

Answer: I think as far as what's shown in the photographs, I would suspect that somebody pulled the emergency brake on.

But in—in comparison—to what the photographs show, *I would say there are probably none that I'm aware.*

It is clear that the questioner was asking about the condition of the car between the time the photos were taken and the car examined in March, 1985. It has nothing to do with "what's being shown in the photographs." In explaining Smith's answer, plaintiffs' argue that "this response may not have been responsive .. (but) it is up to the inquirer to reask the question. There is no duty on the witness to advise the attorney how the question should be asked."

Later, after numerous recesses so the expert and counsel could confer, Smith admitted that the tires had been on another car, but denied any specifics as to when, who moved them, how far they had traveled, etc.

Smith finally confessed his full knowledge in a separate deposition on February 5, 1986.

The tire switch episode is also excluded in Smith's expert report. Smith and counsel explain this, (and possibly inferentially his false testimony in deposition), by stating that Smith's differences in tread depths were sufficient:

It is my opinion that anyone who can not read the information provided on the tread depth of tires and in this case determine that the rear tires had some significant use different than that anticipated, is incompetent to qualify as an accident reconstruction expert.

The expert's report is sufficient as it sets forth the facts upon which Smith bases his opinions, i.e., bald spots on the rear tires and the Capri's propensity for brake lockup. However, it evinces an intent to hide the tire switches from defendant. I have no doubt that Smith intentionally dissimulated in deposition.

Defendant also states in a June 8, 1985 conversation with defendant's expert, Schultz, Smith denied the tires had been used on another car since the accident. Schultz attests as such in affidavit. Smith denies as much in affidavit. This is a pure credibility contest, but Smith's pattern of dissimulation gives no weight to his credibility.

Defendant also cites "tampering with evidence" as grounds for the imposition of dismissal as a sanction. In early September, 1985, plaintiff had taken the brakes and wheel drum off the Capri and put them on a Mustang in order to test the brakes performance. At the last minute, before the tests were to be taken, defendant obtained a protective order. Apparently this is the tampering. Defendant does not specify what the tampering is. Possibly, it was the entire tire debacle, which included Smith's replacing them on the Capri, after Walker had done so incorrectly.

The question now, is whether the plaintiffs' conduct mandates discretionary dismissal. The conduct is: 1) Smith's lying in deposition, 2) Smith's lying to Schultz in informal conversations, 3) Walker's lying in interrogatory, and 4) the tampering. I find Walker did not lie in deposition and that the expert's report was sufficient, but intentionally misleading. Also, I don't find any willful "tampering" occurred, in the sense that any evidence was destroyed.

## ANALYSIS OF
## DISCRETIONARY POWER

My focus is on Smith's deposition conduct and interrogatory number 56. I don't think that dismissal is proper in this circumstance.

While "court's have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice, ... dismissal is so a harsh a penalty, it should be imposed only in extreme circumstances." *Wyle v. R.J. Reynolds Ind. Inc.*, 709 F.2d 585, 589 (9th Cir.1983).

Defendant cites a number of cases supporting dismissal but all those, and all those I've come across in my research, involve far more egregious discovery abuses than those now present.

*Wyle v. Reynolds*, for instance, involved a failure to comply with the court's discovery *orders* and a Rule 11 violation. The other cases all contained a willful destruction of evidence after litigation commenced, as if the destruction was a litigation tactic. *See, WMT Thompson v. General Nutrition Co.*, 593 F.Supp. 1443 (C.D.Cal.1984). This is not the case here. Walker's use of the tires was not a litigation tactic. It occurred before litigation had been commenced and it actually hurts plaintiffs' case.

Plaintiffs' case is based almost entirely on bald spots on the rear tires. In deposition Shawn Walker admitted that she was uncertain that she put the tires back on in the right way. Smith says that she had put them on wrong and that he had later switched them. Smith asserts that the now bald tires were on the rear at the time of the accident. This is the basis for his rear brake lock-up hypothesis. Schultz, defendant's expert, contends that the bald tires were on the front and rear left of the car, thus rebutting the rear brake lock-up hypothesis. One thing is crystal clear, however. Even if the tires were on the rear as Smith asserts, they were not on the wheels in the same place and may not even have been replaced on the same wheels.

What we have is a chain of custody and battle of the experts problem. Thus, the dissimulation, evasion and attempted cover-up are critical matters in this case.

There is absolutely no doubt that it lies within inherent judicial discretion to disqualify or strike an attorney from a case who willfully obfuscates or conceals relevant facts. The method by which courts have previously done this is through "enforcement" of the Code of Professional responsibility. In *Breenbaum-Mountain Mtg. v. Pioneer Nat. Title Ins.*, 421 F.Supp. 1348, 1351 (D.Colo.1976), Chief Judge Finesilver held that

> The Code ... set(s) guidelines for the professional conduct of attorneys appearing before the federal bar (citations omitted) ... the application of the code of professional responsibility is a part of the court's general supervisory authority to ensure fairness to all who bring their case to the judiciary for resolution. We shall apply the Code in the spirit of fairness.

In fact, it is not only within the judicial power to enforce the Code and protect the integrity of this court, it is a *duty*. In overturning a district court's dereliction the Fifth Circuit held that

> The district court was incorrect in its view that breaches of attorney-client privilege *or other ethical duties* can only be raised in separate grievance proceedings brought against counsel ... A district court is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it.

*Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir.1980).

It has further been held that a motion to disqualify is not required for the invocation of disqualification as a sanction:

> The public interest demands a seemly and efficient use of judicial resources towards the just, speedy and inexpensive remedy spoken for in Fed.R.Civ.P. 1 ... the court should *sua sponte* raise ethical problems involving danger to a just, speedy and inexpensive remedy, even if the parties do not.

*General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 711–12 (6th Cir.1982). While defendant in this case has moved for sanctions, it has not specifically sought disqualification.

Disqualification is a matter addressed to the sound discretion of the trial court, *Greenbaum*, 421 F.Supp. at 1351, and will be reviewed under a "clearly erroneous" standard, *Cosette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir.1981). There is no doubt that the attorney in this case has violated a number of the canons and disciplinary rules of the Code of Professional Responsibility by his willful concealment of the tires episode.

Canon 1 provides that "A lawyer should assist in maintaining the integrity and competence of the legal profession." D.R. 1–102(A) prohibits a lawyer from engaging in conduct (4) involving dishonesty, fraud, deceit or misrepresentation; (5) that is prejudicial to the administration of justice; and (6) that adversely reflects on his fitness to practice law.

Canon 7 states that "A lawyer should represent his client zealously within the bounds of the law." D.R. 7–102(A)(7) states that an attorney shall not counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent. Counsel did exactly this with respect to interrogatory number 56 wherein plaintiff denied that any parts had ever been removed from the Capri. D.R. 7–102(B)(2) holds that if a person other than his client has defrauded a tribunal, a lawyer must promptly reveal the fraud. In this case the attorney knew the expert was evasive and dissimulative in deposition, but let him and even helped him with his counsel.

Canon 9 prohibits even the appearance of impropriety.

Despite the barriers of technicality and quiddities of procedure which infuse our legal system, at enormous cost, to insure that litigation constitute a search for the truth, our ultimate reliance must be found in mutual trust and decency. Though the conduct of plaintiff's counsel and expert offer stark evidence to the contrary, litigation is not a game of hare and hounds where rules are easily bent, where truth is skirted by lies and evasions and cheap victory is sought at the expense of fairness and candor. Even if the cynics are correct in saying that such practices are endemic to the system, it is necessary to say in this case that they will not be tolerated.

Given the facts and circumstances of this case, I order the following:

1. Plaintiff's expert, James Lee Smith, is stricken as a witness in this case. Further, he is expressly prohibited from testifying as an expert witness in any case henceforth in the United States District Court for the District of Colorado. Further, a copy of this order shall be mailed to the Clerk of the Supreme Court of the State of Colorado for whatever action that court deems appropriate.

2. The appearance of Charles J. Haase, Esq., as attorney for the plaintiffs herein is stricken. He is removed from this case and prohibited from appearing further. A transcript of today's hearing and a copy of this order shall be delivered to the Clerk of the Court for submission to the court's Committee on Conduct.

3. The order of reference to the Magistrate is recalled.

4. The motion to dismiss and for summary judgment is denied.