Tammie JOHNSON, Elizabeth York, Judy O'Connor and Patricia Caudill, Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS FOR the COUNTY OF FREMONT; and Bob Cheek, in his official and individual capacities, Defendants.

Civ. A. No. 93–K–2465.

United States District Court, D. Colorado.

Nov. 17, 1994.

Richard C. LaFond, Arnold M. Woods, Law Offices of Richard C. LaFond, Denver, CO, for plaintiffs.

William L. Senter, Peter H. Doherty, Greengard Senter Goldfarb & Rice, Denver, CO, Brenda L. Jackson, Fremont County Atty., Meconi & Jackson, Canon City, CO, for Bd. of Cty. Com'rs.

Cathy H. Greer, Hall & Evans, L.L.C., Theodore S. Halaby, Robert M. Liechty, Halaby Cross Liechty, Schluter & Buck, Denver, CO, for Bob Cheek.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The four plaintiffs in this consolidated civil action brought claims of sex discrimination against the defendants. They allege that Defendant Bob Cheek, who was the Sheriff of Fremont County, subjected them to sexual harassment while they were employed either as dispatchers or, in the case of Plaintiff Caudill, as a deputy sheriff. The complaints of the several plaintiffs are replete with allegations of lurid and tasteless comments, obscenities and nonconsensual physical contacts. This memorandum opinion does not deal with the merits of the factual allegations, but rather with fundamental questions concerning an attorney's obligations to represent a client fully and to appear before the court with candor. Because of a lack of clearly defined precedents, sanctions are not imposed even though inappropriate conduct by counsel is found.

A hearing was held on all pending motions on October 19, 1994. At that time I stated I would follow my bench ruling with a memorandum opinion because these issues seriously affect the administration of justice, attention needs to be drawn to them and they appear to be arising with increasing frequency. These issues include so-called limited appearances by counsel and ghost-writing pleadings and briefs by counsel for purportedly *pro se* litigants.

As this memorandum opinion describes in laborious detail, the delay and confusion occasioned in this case by the conduct of various attorneys is extraordinary. Having accommodated to the point of dalliance the various requests of attorneys acting on behalf of or in the person of the Defendant Cheek to delay his obligations to appear and defend, I issued an order to show cause why all pleadings filed on behalf of Defendant Cheek should not be stricken and under what legal authority Cathy H. Greer, Esq. presumed to enter a limited appearance on behalf of a party of record. Also pending were Defendant Cheek's motion for reconsideration of my minute order dated September 19, 1994, Plaintiffs' motion to allow the deposition of Defendant Cheek after the discovery cut off date and Defendants' motion to allow the depositions of Caudill, York and Gary O'Connor after that date.

At the October 19 hearing, I found no cause had been shown and struck the appearance of Greer in this case. I denied all pending motions as moot and rejected the attempt of Messrs. Halaby, Cross, Liechty, Schluter and Buck to enter their limited appearance as counsel for Defendant Cheek in his individual capacity. This memorandum opinion follows.

### I. *Background.*

In December 1993, Plaintiffs commenced these consolidated actions against the Board of County Commissioners for the County of Fremont. On January 28, 1994, I granted Plaintiffs' motion to amend their complaints to add as a new party Sheriff Bob Cheek in his official capacity. Plaintiffs asserted claims against the Board and Cheek in his official capacity pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–17.

On February 4, 1994, Edward G. Rodgers, District Attorney for the Eleventh Judicial District, State of Colorado, requested appointment of a special prosecutor to represent Cheek in this action and an extension of time in which Cheek could file an answer to the complaints. On February 7, 1994, I granted the motion to extend the time for filing an answer up to and including March 7,

1994 but denied the motion to appoint a special prosecutor.[1]

On March 2, 1994, Rodgers filed a further motion for extension of time in which to file an answer. He stated an attorney, David Zook, had been appointed to represent Cheek effective March 7, 1994 when Zook would return to Colorado from Louisiana. I granted an extension of thirty days in which Cheek could file an answer. Mr. Zook did not enter an appearance as suggested.

On April 6, 1994, Cathy H. Greer, Esq. of the law firm of Hall and Evans, representing Bob Cheek in his official capacity as Fremont County Sheriff, requested an extension of time until April 13, 1994 within which to respond to Plaintiffs' first amended complaint. Greer stated she had just been retained and had not yet had an opportunity to discuss the case with Cheek. I granted the extension.

On April 13, 1994, Greer filed an answer of Bob Cheek to the first amended complaint of each Plaintiff. Each answer stated Cheek was answering "in his official capacity as Sheriff of Fremont County" and was signed by Greer of Hall and Evans, "Attorneys for Defendant Bob Cheek."

On June 17, 1994, Plaintiffs filed a motion for leave to file a second amended complaint and to extend the discovery deadline. I granted this motion and extended the discovery deadline to September 28, 1994. Each Plaintiff's second amended complaint includes a claim for relief under 42 U.S.C. § 1983 and seeks punitive damages against "Defendant Cheek in his individual capacity."

On July 29, 1994, Bob Cheek, "in his individual capacity and *pro se*" requested an extension of time to file an answer to the second amended complaint. As Cheek confirmed at the time of the hearing, this and other documents allegedly filed by him in such capacity were ghost-written by Fremont County Attorney Brenda Jackson. Cheek asserted he was seeking declaratory relief from the District Court of Fremont County, Colorado, to determine whether the Board of County Commissioners of Fremont County would provide counsel to represent him in his individual capacity. On August 1, 1994, in deference to the state action, I granted the extension to September 16, 1994.

On August 2, 1994, Greer, of Hall and Evans, "Attorney for Defendant Bob Cheek," filed an answer of "Bob Cheek in his Official Capacity" to each Plaintiff's second amended complaint. On September 16, 1994, Cheek, "in his individual capacity" and *pro se* requested an additional extension of time to file his answer to the second amended complaint. Cheek stated the District Court of Fremont County, Colorado was scheduled to rule on his motion for declaratory judgment on September 26, 1994.

On September 19, 1994 I denied Cheek's motion because he had failed to comply with Local Rule 7.1 A which requires a moving party, before filing a motion, to confer with opposing counsel to resolve the disputed matter. I further ordered Greer to show cause in writing on or before October 3, 1994 why all pleadings filed on behalf of Cheek should not be stricken and under what legal authority Greer presumed to enter a limited appearance on behalf of a party of record.

On September 21, 1994, Greer as "Attorney for Defendant Bob Cheek in his official capacity as Sheriff of Fremont County" requested an extension of the deadline to respond to certain discovery requests "until such time as counsel representing Defendant Cheek in his individual capacity would have an opportunity to become familiar with this case." On September 22, 1994 I denied the request.

On September 21, 1994, Greer filed a response to the order to show cause. She recounted the only claims in the original complaints were pursuant to Title VII and such claims could only be asserted against an individual in his official capacity. She stated such claims were in effect a suit against the entity or office held by the individual, rather than against the individual himself. She maintained in this case the Title VII claim

---

1. I stated this is a federal and not a state court and the cited statute, Colo.Rev.Stat. § 20–1–107, does not apply. This is a civil case in which Cheek is a defendant and no special prosecutor is needed.

was against the "Office of the Sheriff of Fremont County (Bob Cheek in his official capacity)," that on October 1, 1993, Cheek had been suspended from his office of sheriff, that he would not run for re-election, that a successor would be duly elected to replace Cheek as sheriff in January 1995 and that thereafter the official represented by Greer would be someone other than Cheek.

On September 26, 1994, Cheek "in his individual capacity and *pro se*" filed another ghost-written motion for reconsideration of my minute order dated September 1994 and requested the answer date be extended to October 3, 1994. Attached to the motion is a certificate of compliance pursuant to D.C.Colo.L.R. 7.1A, stating that, through Fremont County Attorney Brenda Jackson, Cheek had conferred with Plaintiffs' counsel who indicated he had no objection to the extension.

On September 27, 1994, I set all pending motions and the response to order to show cause for hearing on October 19, 1994, ordering all counsel of record and Cheek to be present.

On September 27, 1994, Plaintiffs filed a motion to allow the deposition of Cheek after the discovery cutoff date (September 28, 1994), within thirty days after the receipt of Cheek's responses to written discovery requests submitted on August 23, 1994. Plaintiffs' counsel explained that my September 22, 1994 denial of Cheek's counsel's motion for extension of time to respond to discovery requests in effect denied the request to allow Plaintiffs to take Cheek's deposition within thirty days after the receipt of Cheek's discovery responses.

On September 28, 1994, Defendants "Bob Cheek, in his official capacity, and Board of County Commissioners for the County of Fremont" filed a motion to allow the depositions of Plaintiffs Patricia Caudill and Elizabeth York and Gary O'Connor, former acting sheriff of Fremont County, after the discovery cutoff.

On September 29, 1994, I notified the parties that all pending motions would be considered at the hearing on October 19, 1994.

On October 3, 1994, Cheek "in his individual capacity and *pro se*" filed an answer to each of the second amended complaints. In it, he "realleges and adopts the assertions contained in his answer prepared and filed by Cathy H. Greer, Esq. of Hall & Evans as his answer in his official capacity" and asserts an additional affirmative defense of qualified immunity to the second claim for relief under 42 U.S.C. § 1983. This pleading, too, was obviously drafted by a lawyer.

On October 19, 1994, the date of the hearing, Theodore S. Halaby and Robert M. Liechty of the law firm of Halaby, Cross, Liechty, Schluter & Buck filed an entry of appearance "as counsel for defendant Bob Cheek, in his individual capacity" which I rejected.

## II. *Entry of a "Limited Appearance."*

Greer was ordered to show cause why all pleadings filed on behalf of Cheek should not be stricken and under what legal authority Greer presumed to enter a limited appearance on Cheek's behalf. The order was entered pursuant to a court's inherent power to control and supervise proceedings before it. *See United States v. Carrigan,* 804 F.2d 599, 603 (10th Cir.1986). " '[D]eeply rooted in the common law tradition is the power of any court to "manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.' " *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1545 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 181, 126 L.Ed.2d 140 (1993) (quoting *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11th Cir.1985)) (citation omitted).

In her response to the order to show cause, Greer persists in asserting that she represents Cheek in his official capacity, but not his individual capacity. She cites *Hafer v. Melo,* 502 U.S. 21, 24–25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) which outlines the distinctions between individual (personal) and official capacity suits. In an official capacity suit, the named official is merely the agent of the governmental entity which is the real party in interest. *Id.*

An individual capacity suit seeks to impose liability on the named "government

officer for actions taken under color of state law." *Id.* at 25, 112 S.Ct. at 362. There is no grammatical or rhetorical ambiguity presented. In either event, it is the individual who must answer and defend. In an official capacity suit, the governmental entity achieves the status of a real party in interest because it is subject to vicarious liability based on the acts or omissions of the named government officer. This does not mean that the individual person who is the government officer ceases to exist or that his office, which might not be a suable entity, is substituted for him as the party litigant.

Greer provides no authority in support of her claimed entrance of a limited appearance on behalf of a party of record.[2] "An appearance is ordinarily an overt act by which a party comes into court and submits himself to its jurisdiction.... It is an affirmative act requiring knowledge of the suit and an intention to appear." *Anderson v. Taylorcraft Inc.,* 197 F.Supp. 872, 874 (W.D.Penn. 1961).

■ The distinction between an appearance on behalf of an individual named in a law suit and the capacities in which that individual is sued apparently escapes Greer. A person may be sued in more than one capacity in a single lawsuit. This does not mean an attorney may limit his or her appearance on behalf of that person to one of the capacities in which the individual is sued.

A party to an action may appear therein in his own proper person or by attorney but he cannot do both.... A party having an attorney of record in an action must be heard in court through such attorney and the court has no power or authority of law to recognize anyone in the conduct or disposition of the case except the attorneys of record therein.

*Endresse v. Van Vleet,* 118 Mont. 533, 169 P.2d 719, 720 (1946); *see* 6. C.J.S. *Appearances* § 9 (1975). Greer, in entering an ap-

pearance on behalf of Cheek, precluded Cheek from appearing therein *pro se* or from retaining other counsel on his behalf. By attempting to represent Cheek to defend only those causes of action on which he may be liable in his official capacity, Greer leaves Cheek undefended for the remainder.

The account of the events leading up to my order to show cause reflects a web of motions and requests for extensions arising out of Greer's purported entry of an appearance on behalf of Cheek only in his official capacity. As noted, "[t]he public interest demands a seemly and efficient use of judicial resources towards the just, speedy, and inexpensive remedy spoken for in Fed.R.Civ.P. 1 ... the court should *sua sponte* raise ethical problems involving danger to a just speedy and inexpensive remedy, even if the parties do not." *Schmidt v. Ford Motor Co.,* 112 F.R.D. 216, 221 (D.Colo.1986).

Greer's attempt to represent Cheek only in part raises a serious ethical question, namely, who is the client? It is not clear who has requested Greer to represent Cheek. The record is silent on this matter. There is no indication that Cheek, whom Greer ostensibly represents, has demanded that his representation be bifurcated. Were he to make such a request, it would be denied summarily. A litigant can either fish or cut bait.

It is clear, however, that Greer has been instructed by someone not appearing before the court to represent Cheek only insofar as he holds the official title of Sheriff of Fremont County. Whatever phantom is calling this tune, however, may not have it played in this court.

"[T]he application of the Code of Professional Responsibility is a part of the court's general supervisory authority to ensure fairness to all who bring their cause to the judiciary for resolution." *Greenebaum–Mountain Mortgage Co. v. Pioneer Nat. Title Ins. Co.,* 421 F.Supp. 1348, 1351 (D.Colo. 1976). "A district court is obliged to take

---

**2.** The reference to "limited appearance" should not be confused with the term "special appearance." Formerly a technical distinction existed between general and special appearances. A party could enter a special appearance for the purpose of objecting by motion to the jurisdiction of the court, the venue of the action or an insuffi-

ciency of process or service of process. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1344 (1990). However, technical distinctions between general and special appearances have been abolished. *Id.; see* Fed.R.Civ.P. 12.

measures against any unethical conduct occurring in connection with any proceeding before it." *Schmidt v. Ford Motor Co.,* 112 F.R.D. at 220. "[A]ll federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant." *Carlucci v. Piper Aircraft Corp.,* 775 F.2d at 1446.

Rule 1.1 of the Colorado Rules of Professional Conduct provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Colo.Rules Professional Conduct 1.1.[3] "[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the rules of professional conduct or other law." *Id.* R. 1.16(a)(1). "A lawyer may limit the objectives of the representation if the client consents after consultation." *Id.,* R. 1.2(c). However, "[a]n agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1." Cmt.Colo. Rules Professional Conduct 1.2.

Whether Greer consulted with Cheek to obtain his consent to such limited representation is not apparent on the information of record. However, even if Cheek's consent was obtained, the scope of such representation violates Colorado Rules of Professional Conduct 1.1. By purporting to represent Cheek only insofar as claims exist against him in his official capacity, Greer left Cheek exposed on those claims which can be sustained against him in his individual capacity. This is not competent or zealous representation as envisaged by Rule 1.1. and has, moreover, led to this significant waste of judicial resources described above.

Greer and her firm are welcome to represent Cheek in this action. So, too, Halaby and Liechty and their firm can enter as co-counsel fully sharing in the responsibility for Cheek's representation. Neither of them, however, can create the absurd situation of representing one metaphysical Cheek and not the other.

### III. *Ghostwriting for a Pro Se Litigant.*

Cheek confirmed at the hearing that the documents he filed "in his individual capacity and *pro se,*" although signed by him, were drafted by Fremont County Attorney Brenda Jackson. Such ghost-writing is far more serious than might appear at first blush. It necessarily causes the court to apply the wrong tests in its decisional process and can very well produce unjust results.

■ It is elementary that pleadings filed *pro se* are to be interpreted liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir.1993). Cheek's pleadings seemingly filed *pro se* but drafted by an attorney would give him the unwarranted advantage of having a liberal pleading standard applied whilst holding the plaintiffs to a more demanding scrutiny. Moreover, such undisclosed participation by a lawyer that permits a litigant falsely to appear as being without professional assistance would permeate the proceedings. The *pro se* litigant would be granted greater latitude as a matter of judicial discretion in hearings and trials. The entire process would be skewed to the distinct disadvantage of the nonoffending party.

■ Moreover, ghost-writing has been condemned as a deliberate evasion of the responsibilities imposed on counsel by Rule 11, F.R.Civ.P.

What we fear is that in some cases actual members of the bar represent petitioners, informally or otherwise, and prepare briefs for them which the assisting lawyers do not sign, and thus escape the obligation imposed on members of the bar, typified by F.R.Civ.P. 11, but which exists in all cases, criminal as well as civil, of representing to the court that there is good

---

**3.** The Local Rules of Practice provide: "The rules of professional conduct, as adopted by the Colorado Supreme Court, are adopted as standards of professional responsibility applicable in this court." D.C.Colo. LR 83.6. The Colorado Supreme Court adopted the Colorado Rules of Professional Conduct effective January 1, 1993.

ground to support the assertions made. We cannot approve of such a practice. If a brief is prepared in any substantial part by a member of the bar, it must be signed by him. We reserve the right, where a brief gives occasion to believe that the petitioner has had legal assistance, to require such signature, if such, indeed, is the fact.

*Ellis v. Maine,* 448 F.2d 1325, 1328 (1st Cir.1971); *see also Klein v. H.N. Whitney, Goadby & Co.,* 341 F.Supp. 699, 702–03 (S.D.N.Y.1971); *Klein v. Spear, Leeds & Kellogg,* 309 F.Supp. 341, 342–43 (S.D.N.Y.1970). Such an evasion of the obligations imposed upon counsel by statute, code and rule is *ipso facto* lacking in candor.

The ABA Standing Committee on Ethics and Professional Responsibility has stated that an undisclosed counsel who renders extensive assistance to a *pro se* litigant is involved in the litigant's misrepresentation contrary to Model Code of Professional Responsibility DR 1–102(A)(4), which provides: "A lawyer shall not: ... (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation." ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1414 (1978). Similarly, such conduct will not be countenanced because it is contrary to Colorado Rule of Professional Conduct 1.2(d) which provides "[a] lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent."

Having a litigant appear to be *pro se* when in truth an attorney is authoring pleadings and necessarily guiding the course of the litigation with an unseen hand is ingenuous to say the least; it is far below the level of candor which must be met by members of the bar.

## IV. *Conclusion.*

Because no just cause has been shown, the appearance of Greer in this case is STRICKEN. For the reasons stated in this memorandum opinion, the entry of appearance for Cheek in his individual capacity by Theodore S. Halaby and Robert M. Liechty is REJECTED. Cheek now appears *pro se.* On October 19, 1994, he was given thirty days in which to answer the amended complaints either appearing *pro se* or by counsel, but not

both. All pending motions are deemed MOOT and DENIED. A scheduling conference will be held on Wednesday, December 7, 1994 at 9:00 a.m. If an answer is filed by then, discovery will be expedited and a firm trial date set.

A judge is constrained by Canon 3 of the Code of Conduct for United States Judges to initiate appropriate action when he or she becomes aware of the likelihood of unprofessional conduct by a lawyer. Having published this memorandum opinion is, in my view, sufficient appropriate action since I am confident that none of the offending conduct referred to was thought of as such by the lawyer or lawyers involved. Further, the Rules of Professional Conduct adopted by the Colorado Supreme Court and perforce by this court as well as existing ethics opinions of the Colorado Bar Association have not given adequate attention to the ethical considerations implicit in the practice of ghost-writing.

I have given this matter somewhat lengthy attention because I believe incidents of ghost-writing by lawyers for putative *pro se* litigants are increasing. Moreover, because the submission of misleading pleadings and briefs to courts is inextricably infused into the administration of justice, such conduct may be contemptuous irrespective of the degree to which it is considered unprofessional by the governing bodies of the bar. As a matter of fundamental fairness, advance notice that ghost-writing can subject an attorney to contempt of court is required. This memorandum opinion and order being published thus serves that purpose.