**Thomas Daniel RICOTTA, Plaintiff,**

v.

**STATE OF CALIFORNIA et al., Defendant.**

No. 97CV1667–J (CGA).

United States District Court,
S.D. California.

April 15, 1998.

Thomas Daniel Ricotta, in pro per.

Daniel E. Lungren, Atty. Gen., Karen M. Walter, Deputy Atty. General, San Diego, CA, for State of Cal., Commission on Judicial Performance.

Marie M. Moffat, Gen. Counsel, Dina E. Goldman, Asst. Gen. Counsel, San Francisco, CA, for State Bar of Cal.

John J. Sansone, County Counsel, Deborah A. McCarthy, Deputy County Counsel, San Diego, CA, for County of San Diego, Judges, Judges Pro Tem, and Commissioner in Official Capacities.

Matthew D. Murphey, Murphey Law Offices, A.P.C., Carlsbad, CA, for Individual Defendants in their Private Capacities.

John Farrell, El Cajon, CA, for Potential Contemnor Lois Brown Kelly.

1. Defendants include: The County of San Diego, Judge William Howatt Jr., Judge Thomas R. Murphy, Judge Marguerite L. Wagner, Judge Gerald L. Barry, Jr., Judge Ruston Maino, Judge Pro Tem Paul E. Gavin, Judge Pro Tem Gordon Meyer, and Commissioner Etta C. Gillivan.

2. Defendants include: The State of California and the State of California, Commission on Judicial Performance.

## ORDER

JONES, District Judge.

On November 5, 1997, Thomas Ricotta ("Plaintiff") filed an Amended Complaint ("Am.Compl.") alleging the following four causes of action: 1) violations of his civil rights under 42 U.S.C. § 1983, 2) violations of the Racketeer Influenced and Corrupt Organizations Act, ("RICO") 18 U.S.C. § 1962(c), 3) conspiracy to interfere with his civil rights pursuant to 18 U.S.C. §§ 1985 and 1986, and 4) a cause of action for equitable, injunctive, declaratory relief and restitution. In his Amended Complaint Plaintiff names eighteen Defendants who allegedly harmed him during dissolution proceedings initiated by his former wife on April 30, 1991, and culminated in September of 1996. For the purpose of this Order the Court has categorized the eighteen Defendants into four separate groups identified as: 1) the "County," [1] 2) the "State," [2] 3) the "Bar" [3] and, 4) the "Individuals." [4]

This matter comes before the Court on all Defendants' (except Fred Weedon) motions to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) & 12(b)(6). The Defendants have all filed various notices of motions, memorandums of points and authorities, and notices of joinder in each others motions and memorandums. Subsequent to the filing of the motions to dismiss, Fred Weedon ("Weedon") filed a motion to set aside the entry of default. Weedon's motion is also addressed in this Order.

Additionally, the Individuals filed an ex parte application for an order to show cause why Plaintiff and his alleged ghost-writing attorney, Lois Brown Kelly, should not be held in contempt of court. On February 2, 1998, this Court issued an Order to Show Cause and has received memorandums of points and authorities, and declarations from

3. This Defendant is the State Bar of California.

4. Defendants include: Paul E. Gavin, Ellen A. Ricotta, Roy Garret, Karen Guillotti, and Gordon Meyer.

defense counsel, Plaintiff, and the claimed ghost-writing attorney Lois Brown Kelly. The request for a finding of contempt is also analyzed in this Order.

On Tuesday, February 16, 1998, the Court heard oral argument from all parties on all of the above mentioned motions, except for Weedon's request to set aside the entry of default.[5] Subsequently, this Court took the matters under submission, and on February 20, 1998, issued an order requesting supplemental briefing from the County and Plaintiff to explain what Judgment Plaintiff claimed Commissioner Etta C. Gillivan allegedly signed which resulted in her inclusion in his Amended Complaint.

For the reasons set forth below this Court:

■ 1) DISMISSES with PREJUDICE Plaintiff's first and third causes of action as to all Defendants for lack of subject matter jurisdiction.[6]

■ 2) DISMISSES with PREJUDICE Plaintiff's second cause of action for RICO violations as to all Defendants for failure to state a claim.[7]

3) DISMISSES with PREJUDICE Plaintiff's fourth cause of action for equitable relief as to all Defendants because the requested relief is beyond the Court's subject matter jurisdiction.

4) GRANTS Defendant Weedon's request to set aside the entry of default.

5) DENIES the Individual Defendants' request for finding Plaintiff and Lois Brown Kelly in contempt of court, and

6) DIRECTS the Clerk of the Court to close this case file in its entirety.

## I. Introduction

The facts and circumstances of this case arise from marriage dissolution proceedings between Plaintiff and his former wife Ellen Ricotta. On April 30, 1991, Ellen Ricotta filed a petition for dissolution against Plaintiff in San Diego County Superior Court. (Am.Compl.¶ 2). The dissolution trial commenced on January 24, 1992, at which time Plaintiff was represented by counsel. (Am. Compl.¶ 10). On March 19, 1992, Judge William Howatt, Jr., issued a Statement of Decision. (Am.Compl.¶ 16). Plaintiff requested several clarification hearings which resulted in a second trial in February of 1993. (County's Mem. at 4). Since that time, there have been numerous motions and hearings, four separate appeals brought by Plaintiff, and several complaints filed by Plaintiff to the Commission on Judicial Performance and the California State Bar. (Am.Compl.¶ 5). As a result of the trials, hearings, and rehearings, Ellen Ricotta was awarded certain amounts of money and property from the marital estate. (Individuals' Mem. at 2). In addition, Plaintiff was assessed portions of Ellen Ricotta's attorneys' fees. (Individuals' Mem. at 2).

On September 15, 1997, Plaintiff filed his original complaint. On October 15, 1997, Plaintiff filed a RICO case statement. On November 5, 1997, Plaintiff filed an Amended Complaint naming Commissioner Etta C. Gillivan as a Defendant. The essence of Plaintiff's lawsuit is his contention that the Judges, Commissioner, attorneys, and individuals involved in the marriage dissolution proceedings conspired to deprive him of his rights under the First, Fourth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments of the United States Constitution. Accordingly, Plaintiff wants this Court to award damages

---

5. The Court found the request to set aside the entry of default a matter suitable for disposition without oral argument pursuant to Local Rule 7.1, and notified the parties that the matter would be decided on the papers.

6. The Court can dismiss this claim for Defendant Fred Weedon even though he has not filed a motion to dismiss because a court may dismiss matters sua sponte over which it does not have jurisdiction. See, e.g., Fiedler v. Clark, 714 F.2d 77, 78–79 (9th Cir.1983); Fed. R. Civ. P. 12(h).

7. The Court can dismiss a claim sua sponte for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Yahya M.A. Omar v. Sea–Land Service, Inc., 813 F.2d 986 (9th Cir. 1987). "Such a dismissal may be made without notice where the claimant cannot possibly win relief." Id. (citing Wong v. Bell, 642 F.2d 359, 361–62 (9th Cir.1981)). See discussion infra at 979.

in the amount of the judgments plus interest on all monies, "he wrongfully was compelled to pay in satisfaction of judgments." (Am. Compl.¶ 113). Plaintiff also wants damages for the loss of his business reputation and credit status that prevented him from earning a livelihood. Plaintiff requests compensatory and punitive damages. (Am. Compl.¶ 115).

## II. Overview Of The Amended Complaint

The Court spent considerable time reading and re-reading Plaintiff's Amended Complaint. At the outset the Court must note that it found the Amended Complaint very difficult to follow. More importantly, the Amended Complaint is filled with conclusory allegations. Plaintiff alleges that "the State Law upon which the Superior Court has (sic) seized and relinquished and will relinquish in the future is invalid, in that the law was used by a CRIMINAL ENTERPRISE, Racketeer influenced and corrupt organization act (CIVIL RICO) and a violation of plaintiff's' Constitutional Rights." (Am. Compl. at 2). In support of this argument, Plaintiff summarizes a trilogy of events from the dissolution proceedings that allegedly substantiate the causes of action. For instance, Plaintiff asserts that on January 24, 1992, the first day of trial, Ellen Ricotta's attorney, Defendant Paul E. Gavin ("Gavin"), "came up to [Plaintiff] and his attorney William Pabarcus and stated 'No (curse word) San Diego attorney is going to come into my court and get any (curse word) thing.' In seven years of litigation his words have rung true. This attempt of intimidation amounts to extortion of a criminal act by a criminal enterprise." (Am. Compl.¶ 10). Plaintiff continues to accuse Defendant Gavin of wrongdoing by stating that:

[Gavin] has a history of milking a case like this one which he has called, "Cash Cow." When there is an estate of $1,000,000 he feels he has a right to 10%, and he has a history of getting $100,000 dollars in fees out of case. Then he runs just as he did in this case. Attorney Gavin also bragged how he never will compromise, unless, his client makes him. This is a statement he has made to other attorneys. He uses this

symbiotic relationship with the judges to get his ill goten gains to wine and dine judges to get personal favors to in rich his criminal enterprise.

(Am.Compl.¶ 93).

Plaintiff makes a series of allegations against various judges that presided over his dissolution proceedings. For instance, Plaintiff proclaims that:

[w]hen [Plaintiff] first entered Judge Howatt's courtroom on January 24, 1992, his clerk Karen Knard stated that the Judge hates family law and she hates family law and neither wanted any part of this case. [Plaintiff] could hear Judge Howatt's speaking to someone in his chambers. [Plaintiff] heard Judge Howatt mention his name and talking about the case. From the judge's opening statement [Plaintiff] could tell he was already prejudiced.

(Am.Compl.¶ 11).

Plaintiff then accuses Judge Thomas R. Murphy of bribery by stating that "Judge Murphy refused to rule and then offered [Old Republic Title Company] a bribe ... of $10,000 to close the escrow." (Am.Compl.¶ 56).

Next, Plaintiff submits a request to the Court to take judicial notice that:

the San Diego County Superior Court is corrupt by the Federal Convictions of Presiding Judge Greer, and Superior Court Judge Malkus and Superior Court Judge Adams. This Federal Case # 96–698 et. al. is the same kind Modis Aperandi of Attorneys bribing judges to get exorbitant legal fees, and gain advantage by this illegal act, but just different players ....

(90) The history of corruption in the San Diego County Courts, and chain of bias all the way to the Appeals court is the same kind of corruption as in this case, [Plaintiff] request a judge from outside San Diego County hear this case. [Plaintiff] request that the same rights afforded to Judges Greer, Malkus, and Adams be afforded him, to have unbiased judge.

(91) The plaintiff requests the court to take Judicial Notice of United States Supreme Court Justice Brandies statement in *Olmstead v. United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), "[c]rime

is contagious. If the government become a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

(Am. Compl. at ¶¶ 89–91).

## A. First Cause Of Action

In his first cause of action Plaintiff alleges a violation of civil rights pursuant to 42 U.S.C. § 1983. Plaintiff states that from the period of April 1991, to the present, the named Defendants through their conduct and under color of state law conspired together to deprive him of a fair and impartial trial and violated his rights under the First, Fourth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments of the United States Constitution. (Am.Compl. ¶ 97). Plaintiff further claims that the state proceedings involving the dissolution of his marriage were motivated by greed, bad faith, harassment, intimidation, and willful criminal violations under State and Federal law. (Am.Compl. ¶ 97). Plaintiff believes federal intervention is proper because of the sale of marital property conducted within Washington State. (Am. Compl. ¶ 98).

## B. Second Cause Of Action

Plaintiff's second cause of action alleges civil RICO violations pursuant to 18 U.S.C. §§ 1961(1) & (5), and 18 U.S.C. §§ 1962 et al. Plaintiff asserts that the requisite acts of racketeering include, but are not limited to, conduct by Defendant Gavin in his capacity as both an attorney and Judge Pro Tem. (Am.Compl. ¶ 100). Plaintiff states that all Defendants associated with the conduct of Defendant Gavin, and with knowledge either directly or indirectly engaged in activities that affected both interstate and intrastate commerce. Such activity resulted in the conversion, undue influence, and bribery of California Superior Court Judges. (Am.Compl. ¶ 100). Plaintiff then claims that this "criminal enterprise caused [Defendants] to fail in their duty to enforce the Oath of Office and Judicial Canons of Ethics and the laws of the State of California, obstruction of a fair administration of justice, conversion, bribery, grand theft, perjury, and conspiracy." (Am. Compl. ¶ 100).

Plaintiff contends that this criminal enterprise violated:

(1) criminal statutes of the California Penal Code regarding Grand Theft P.C. 487, Conspiracy P.C. 182, Conspiracy to Falsify Public Records P.C. 134, Falsifying a Public Document P.C. 115, False Affidavit P.C. 127, Perjury P.C. 127, Subornation of Perjury P.C. 118(a); (2) Government Code violations of False Filing of Public Record § 6200 and 620; and (3) Federal violations of civil and constitutional rights under the Fifth and Fourteenth Amendments, right to due process, right to fair and impartial tribunal, right to attorney, right to cross-examine witnesses, right to be heard in court of law, Mail Fraud 18 U.S.C. § 1341, and Wire Fraud.

(Am.Compl. ¶ 102).

## C. Third Cause Of Action

In his third cause of action Plaintiff alleges civil rights violations pursuant to 42 U.S.C. §§ 1985 and 1986. Plaintiff asserts that, "[a] person or Class of persons should not be discriminated against because they can not afford an attorney or as in the plaintiff's case not allowed to have an attorney by the court and must act in propria persona against an attorney that is a friend of the court and before the judge every day." (Am. Compl. ¶ 103). Plaintiff states that he was not provided equal access or equal protection of the court and that, "this bias resulted in invidiously discriminatory conduct in violation of the Constitution." (Am.Compl. ¶ 103).

Plaintiff further claims that there is an "unwritten policy in the San Diego Superior Court of discrimination against any person filing a court action in propria persona." (Am.Compl. ¶ 104). In support of this assertion, Plaintiff claims to have witnessed judges berate unrepresented persons in open court with statements like,"'who do [unrepresented persons] think they are to think they can represent themselves when I went to seven years of schooling and they think they are an equal.'" (Am.Compl. ¶ 105). Identified by name is Judge William Howatt Jr., who Plaintiff alleges chided him after he supposedly did a "lousy" job representing himself. Also named is Judge Gerald L. Barry Jr.,

whom Plaintiff claims threatened him with arrest while he represented himself in a pro se capacity. (Am.Compl.¶ 105). Plaintiff further alleged that Judge Thomas R. Murphy did not allow him to represent himself at a hearing. (Am.Compl.¶ 109). Plaintiff claims that Judge Murphy had him removed from the courtroom when he asked, "Why am I held to standards of an attorney and the attorneys are not held to any standards in the North County Court?" (Am. Compl.¶ 109).

## D. Fourth Cause Of Action

Plaintiff's fourth cause of action alleges that had the Defendants not engaged in the wrongful acts Plaintiff would have likely prevailed in the dissolution proceedings and would have received one half of his estate worth $925,000. Plaintiff, demands a "declaration that all judgments are void, receive full restitution of the amounts paid to satisfy the judgments, and recover attorneys fees and other litigation expenses incurred in the corrupt trials." (Am.Compl.¶ 110).

## E. Remedies

Plaintiff seeks damages, "in the amount of judgments, together with interest thereon, to compensate plaintiff for; all monies he wrongfully has compelled to pay in satisfaction of judgments, and lose (sic) of property, and defendant's conduct which has severely damages (sic) plaintiff's business reputation, and credit status and prevented him from earning a livelihood. Including his ability to earn future livelihood." (Am.Compl.¶ 113).

Additionally, Plaintiff wants a declaration that all proceedings in the State Courts of California and the State Courts of Washington are "null, void and of no effect." (Am. Compl.¶ 115(B)). Plaintiff also requests an award of compensatory and punitive damages. Plaintiff asks that the Court establish an independent investigative agency to "prosecute government corruption and corruption in our courts." (Am.Compl.¶ 115(M)). Plaintiff also wants that the Court to order the State of California to fund an investigative body that will oversee the Commission on Judicial Performance and the State Bar of California. (Am.Compl.¶ 115(N)).

## III. Legal Standards For Dismissal

Defendants argue that pursuant to FED. R. CIV. P. 12(b)(6), this Court should dismiss Plaintiff's second cause of action for violations of RICO. Under FED. R. CIV. P. 12(b)(6), a defendant may bring a motion to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). This motion tests whether the allegations of the Complaint satisfy the requirement of FED. R. CIV. P. 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV.P. 8(a). Although there need not be an elaborate recitation of every fact a plaintiff may rely upon at trial, in order to withstand a motion to dismiss, there must be a finding that the Complaint gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

A dismissal is warranted where "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him[her] to relief." *Id.* at 45–46, 78 S.Ct. 99. The Complaint should be liberally construed in favor of the Plaintiff, and its factual allegations taken as true. *Oscar v. University Students Co–operative Ass'n,* 965 F.2d 783, 785 (9th Cir.1992), *cert. denied,* 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988). In giving liberal interpretation to a pro se civil rights complaint, the Court may not, however, supply essential elements of a claim that were not initially pled. "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of the University of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). Nevertheless, the Court must give a pro se litigant leave to amend the Complaint unless it is "absolutely clear that the deficiencies of the complaint

could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir.1987).

Defendants also argue that this Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction. Specifically, the Defendants assert that the first and third causes of action are barred by the statute of limitations. Additionally, Defendants believe that the Court does not have subject matter jurisdiction to afford Plaintiff's requested relief in his fourth cause of action. Under Rule 12(b)(1), a defendant may seek to dismiss a complaint for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When considering a 12(b)(1) motion to dismiss, the district court "is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes when necessary." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir.1979)).

## IV. Parties For Whom The Entire Complaint Must Be Dismissed With Prejudice

There are several Defendants who are entitled to immunity from suit in federal court. Accordingly, as discussed below the Amended Complaint must be dismissed with prejudice as to Defendants: 1) Howatt, 2) Murphy, 3) Wagner, 4) Barry, 5) Maino, 6) Meyer, 7) Gillivan, 8) the State of California, 9) the Commission on Judicial Performance, and 10) the California State Bar.

### A. The Judges: Howatt, Murphy, Wagner, Barry, Maino

Judges and those performing judge-like functions are absolutely free from liability for damages for acts performed in their official capacities. *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986) (en banc). Judicial immunity applies no matter how "erroneous the act may have been, and however

injurious in its consequences it may have proved to the plaintiff." *Ashelman,* 793 F.2d at 1074 (citing *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (quotations omitted)). Judicial immunity is not affected "by the motives with which their [Judges] judicial acts are performed." *Id.* at 1077. Thus, intent does not play a role in the immunity analysis. *Id.* "A judge will not be deprived of immunity because the action he [she] took was in error, was done maliciously, or was in excess of his [her] authority; rather he [she] will be subject to liability only when he [she] has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (quotations omitted). Further, "allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence." *Id.* at 1078 (citing *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir.1985)). The public policy that underlies judicial immunity is the furtherance of independent and disinterested judicial decision making. *Ashelman,* 793 F.2d at 1078. To effectuate this policy the Ninth Circuit broadly construes the scope of judicial immunity, which applies even if there are allegations that a judicial decision resulted from a bribe or a conspiracy. *Id.*

The immunity, however, is not absolute. A Judge is not immune if a plaintiff seeks prospective injunctive relief. *Pulliam v. Allen,* 466 U.S. 522, 541–41, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Nor is a Judge immune if he or she acts in clear absence of all jurisdiction or performs an act that is not judicial in nature. *Ashelman,* 793 F.2d at 1075. An act is judicial in nature if it is a function normally performed by a judge. *Id.* To determine if the judge acted with jurisdiction, courts analyze whether the judge acted clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction. *Id.*

In the instant case Plaintiff is suing five Judges due to alleged misconduct that occurred during his dissolution proceedings. For example, Plaintiff states that the Judges

conspired "to deprive the plaintiff of a fair and impartial trial." (Am.Compl.¶ 97). For all causes of action Plaintiff requests an award of damages to compensate him for the divorce judgments he had to pay, his loss of business reputation, and other benefits. Additionally, Plaintiff requests punitive damages. Accordingly, given that neither exception to judicial immunity is applicable, and because Plaintiff seeks damages for alleged violations of his civil rights, the five judges are all immune from suit and must be dismissed from this action with prejudice.

## B. The Pro Tem Judges Gavin And Meyer

Judges and those performing judge-like functions are absolutely free from liability for damages incurred resulting from acts performed in an official capacity. *Ashelman,* 793 F.2d at 1072. Thus, the general rules of judicial immunity also apply to Pro Tem Judges.

### 1. Meyer

Plaintiff's claim against Judge Meyer is that he was biased and refused to recuse himself even though he was good friends with Ellen Ricotta's appellate attorney Roy Garrett. Meyer supposedly had adjoining offices with Garrett and shared a secretary. (Am.Compl.¶ 44). Plaintiff further explains that there was a recusal hearing and the presiding Chief Judge concluded that recusal was unnecessary. (Am. Compl.¶ 47). Plaintiff goes on to allege that Meyer applied the law incorrectly. (Am. Compl.¶ 48). In light of such allegations, Plaintiff cannot show that Meyer acted in clear absence of all jurisdiction or performed an act that is not judicial in nature. *Id.* at 1075. Thus, Meyer cannot be sued given the doctrine of judicial immunity. Additionally, the Court notes that while Plaintiff sued Meyer in his individual capacity, there are no allegations in Plaintiff's Amended Complaint concerning Meyer other than his actions while acting as Pro Tem Judge. Thus, this Amended Complaint is dismissed· as to Defendant Meyer with prejudice.

### 2. Gavin

Plaintiff also sues Gavin in an official capacity as a Pro Tem Judge. His allegations against Gavin in an official role amount to one sentence: "At the next hearing, on November 22, 1991, Thomas was astonished to see the judge was Paul E. Gavin acted as Judge Pro Tem as well as attorney of record for Ellen. In an attempt to intimidate Thomas, he slammed the gavel, glared at Thomas and continued the hearing." (Am. Compl.¶ 7). There are no allegations that Gavin's assignment as a Judge Pro Tem caused Plaintiff any harm. The Court surmises that Gavin was erroneously assigned to the case and recused himself accordingly. Thus, the Court does not see how Plaintiff could state a cause of action against Gavin for acts performed as a Judge Pro Tem. Assuming arguendo that Plaintiff could plead some facts to show that Gavin acted clearly outside the scope of his jurisdiction and caused him harm, for the reasons explained, *infra* at 977–985, all of Plaintiff's causes of action against Gavin must nonetheless be dismissed with prejudice.

## C. The Court Commissioner, Etta C. Gillivan

Judicial immunity extends to municipal court commissioners. *O'Neil v. City of Lake Oswego,* 642 F.2d 367, 368 n. 2 (9th Cir.1981). Specifically, under the California Government Code § 72190 the Judicial Commissioner is a judicial officer. As such, judicial immunity extends to commissioners when they perform judicial functions, even if their acts are in excess of jurisdiction or are alleged to have been malicious or corrupt. *Franceschi v. Schwartz,* 57 F.3d 828, 829 (9th Cir.1995). Moreover, "[j]urisdiction is construed broadly where the issue is the immunity of a judge. [*Crooks v. Maynard,* 913 F.2d 699,] 701 [(9th Cir. 1990)]." Acts performed in excess of jurisdictional authority do not deprive the judge of immunity. *Schucker v. Rockwood,* 846 F.2d 1202, 1204 (9th Cir.), *cert. denied,* 488 U.S. 995, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988). This immunity "serves to protect judges not only against monetary damages, but further from vexatious litigation, which can be equally

chilling of judicial independence regardless of its outcome." *O'Neil,* 642 F.2d at 370.

■ Plaintiff alleges that Commissioner Gillivan perfected an illegal judgment against him contrary to Judge Howatt's Order. Plaintiff asserts in relevant part that:

> Attorney Gavin then took this illegal judgment to his friendly commissioner Etta Gillivan, on the one day she was acting as presiding judge. Thomas had already refused to allow her to hear this case, because of her close relationship with attorney Gavin. She signed the Judgment even though there had never been hearing [sic], we were not in her Court and she had no jurisdiction. He then filed it with the San Diego County Recorders Office and Mailed it in the U.S. Mail to Thomas committing mail fraud.

(Am.Compl.¶ 54).

In his opposition Plaintiff further asserts that Ms. Gillivan acted outside her capacity in signing the judgment because:

> Pursuant to the Code of Civil Procedure 635 and Special Matter Order No. 0191994, designated backup judges may sign routine orders conforming to the minutes made by the assigned independent calendar judge when the assigned judge is unavailable. This delegation of authority does not apply to judgments or orders which are either dispositive of the case or pertain to complex procedural or substantive issues.

(Pl.'s Opp. to County's Mem. at 3–4).

After hearing oral argument this Court issued an order requesting supplemental briefing. The Court directed the parties to provide a copy of the judgment Plaintiff referred to in the Amended Complaint which he alleged the Commissioner signed. (Order, Feb. 19, 1998, at 3). The attorney for the County responded that they could not find a judgment signed by Commissioner Gillivan. Plaintiff, however, pointed the Court to exhibit 10 in his RICO case statement. This is a signed order entitled "Judgment Re Attorney's Fees." The Judgment reads in its entirety:

> On July 14, 1993 Judge William Howatt ruled on the matter of unresolved attorney's fees as follows:

**Attorney's Fees and Costs:**

> Attorney's fees and costs are awarded to the petitioner from the respondent in the sum of $72,766.85. Respondent is entitled to and shall receive credit for such payment as has been previously received and/or paid over toward this obligation. The calculation accepted by the Court at this time is $72,766.85 minus $21,873.93, which leaves a balance due in the sum of $50,892.00.

> It is so ordered.

(Pl.'s RICO case statement, Ex. 10).

[31, 32] The date of the Judgment is June 2, 1995. The Judgment is signed by Gillivan and underneath her signature is stamped, "signed pursuant to § 635 C.C.P. by the supervising judge, North County Branch, as acting presiding judge." (Pl.'s RICO Case Statement, Ex. 10). County Counsel did provide a copy of the Order by Judge Howatt of July 14, 1993, to which the June 2, 1995, order refers. The Court can review and consider this Order of July 14, 1993, pursuant to the doctrine of Judicial Notice. Federal Rule of Evidence 201 allows a court to consider official records and reports without converting a 12(b)(6) motion into a Rule 56 motion for summary judgment. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994). This Order is entitled "Order after Hearing," and was signed by Judge Howatt on July 14, 1993. In this Order on page 3, in a section entitled, "C. Attorney Fees and Costs" is the paragraph Ms. Gillivan's Judgment copied verbatim regarding the calculation and amount of attorneys fees.

After reviewing these orders this Court finds that Commissioner Gillivan did not act in clear absence of all jurisdiction nor did she perform an act that was not judicial in nature. *Ashelman,* 793 F.2d at 1075. Rather, pursuant to CAL. CODE CIV. P. § 635, she signed a judgment for an order previously issued by Judge Howatt. Under § 635, "[i]n all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable, the formal judgment or order conform-

ing to the minutes may be signed by the presiding judge of the court or by a judge designated by the presiding judge." (CAL. CODE CIV. P. § 635). In the instant case Gillivan signed a formal judgment confirming an order previously given by Judge Howatt. At this time Judge Howatt was unavailable because he was no longer assigned to Family Court in North County. Thus, Gillivan performed an act judicial in nature and within her jurisdiction.

Even assuming arguendo, the truth of Plaintiff's assertion that under § 635 Judges may not sign judgments or orders that are either dispositive of the case or pertaining to complex procedural or substantive issues, the Court's analysis remains the same. The Commissioner signed a judgment for an order regarding attorneys' fees previously given by Judge Howatt. An award of attorneys' fees is not dispositive of the case, nor is it a complex substantive or procedural issue. The Court recognizes that this Judgment was signed two years after the original order by Judge Howatt, and a year after a subsequent judgment by Judge Wagner on attorneys' fees. However, jurisdiction is broadly construed when the issue is the immunity of a judge. Judicial immunity applies no matter how "erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman*, 793 F.2d at 1074 (citing *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (quotations omitted)). Plus, "[a] judge will not be deprived of immunity because the action he [she] took was in error, was done maliciously, or was in excess of his [her] authority; rather he [she] will be subject to liability only when he [she] has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (quotations omitted). Thus, even if this judgment was no longer necessary and was signed in error, Plaintiff cannot show that the Commissioner, who acted in accordance to § 635, did so in clear absence of all jurisdiction. Therefore, the Commissioner must be dismissed from this case with prejudice.

■■■■ Even if the Court could not dismiss Gillivan on the above grounds, Plaintiff's claim against the Commissioner is barred by the Eleventh Amendment. Plaintiff sued the Commissioner in her official capacity for a judgment she signed while on judicial duty. As a result, Plaintiff seeks damages from the Commissioner and a ruling that all judgments entered against him are void. As discussed below this Court does not have jurisdiction to hold that all previous judgments are void. *See* discussion *infra* at 979–980. Additionally, to the extent his claim is for damages, an action for money damages against a state official is considered to be a suit against the state and is barred by the Eleventh Amendment if "the state is the real, substantial party in interest, or if judgment is sought against the public treasury." *Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986). Therefore, Plaintiff's claim against the Commissioner is barred by the Eleventh Amendment, and she must be dismissed from the complaint with prejudice.

### D. The State Of California And The Commission On Judicial Performance

■■■■ Pursuant to the Eleventh Amendment of the United States Constitution the State of California and the Commission on Judicial Performance must be dismissed from this case with prejudice. First, as to the Commission on Judicial Performance, Plaintiff alleges that he filed complaints with the Commission "on every judge who had violated his rights, as well as the pro tem judges. They stated they had no jurisdiction on the pro tem judges. And after two years of stone walling they did nothing, just as they did on Presiding Judge Greer, and Judges Malkus and Adams case." (Am. Compl.¶ 86). With respect to the State of California Plaintiff alleges that it failed to regulate the state agency of the Commission on Judicial Performance and the State Bar of California. Plaintiff argues that the State of California should fund an investigative body annually, "that will prosecute and correct this kind violations [sic] of the law, Thomas will release them from any liability. *It has cost the taxpayer enough!* " (Am. Compl. at 38, request for relief) (emphasis in original). With respect to the RICO claims Plaintiff alleges that the State of California has failed

to protect its citizen's constitutional rights by not enforcing the state law on its own enforcement agencies. Plaintiff argues that the Commission on Judicial Performance has "failed by their own statistics." (RICO Case Statement at 2).

The Eleventh Amendment provides that the power of the federal judiciary "shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST.AMEND. XI. The Eleventh Amendment bars suits against a state brought by its own citizens, whether the relief sought is money damages or an injunction. *Shaw*, 788 F.2d at 600; *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Plus, a suit against a state agency, in this case the Commission on Judicial Performance is considered to be a suit against the state and is also barred by the Eleventh Amendment. *Id.* (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

Plaintiff argues that the Eleventh Amendment is inapplicable because "he asked the State of California to fund an investigative body as a watchdog to prosecute and correct violations against the citizens of the State of California. Plaintiff seeks no monetary relief for himself." (Pl.'s Mem. in Opp. to State's Mem. at 4). Plaintiff also requests an opportunity to amend his complaint because he admits that he erroneously sued the state instead of the chairperson of the commission.

Plaintiff's argument regarding monetary relief is not persuasive. First, in his Amended Complaint Plaintiff requests a monetary award, including punitive damages, against all defendants for all causes of action. Even if the Court construed his request for damages against the State as one strictly for funding an investigative body, the Eleventh Amendment would still bar the suit. The Eleventh Amendment prohibits suits by private individuals against the State if the request for relief requires expenditures of public funds from the State treasury. *Edelman*

*v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Shaw*, 788 F.2d at 603 (9th Cir.1986). Because Plaintiff requests that the State of California and/or the Commission allocate funds to establish an agency to serve as a watch dog his suit is barred by the Eleventh Amendment. Therefore, the State and the State Commission on Judicial Performance must be dismissed from the Complaint with prejudice.

Finally, this Court need not grant Plaintiff leave to file a Second Amended Complaint to name the actual Commissioner or other employees, because such an amendment would clearly be futile. *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir.1987); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.1990), *cert. denied*, 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991) (holding that a court may deny leave to amend a complaint and dismiss a case with prejudice if any amendment would be futile). As mentioned previously, because Plaintiff's proposed request for relief against the Commissioner would require the expenditure of state funds, it would be barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 663, 94 S.Ct. 1347. Therefore, the State Bar and Commission on Judicial Performance are dismissed from the case with prejudice, and the Court denies Plaintiff's request to file an amended complaint to name the Chairperson of the Commission as a defendant.

### E. The State Bar

Plaintiff also sues the State Bar. The allegations against the Bar are delineated in paragraph eighty-three in which Plaintiff asserts that he filed complaints with the State Bar about attorneys Gavin and Meyer, but the State Bar refused to investigate his case. Plaintiff asserts that he appealed the Bar's inaction within the organization and to the California Supreme Court, who denied his appeal. (Am.Compl.¶ 83).

Similar to the analysis above, Plaintiff's Amended Complaint is barred by the Eleventh Amendment. In his opposition Plaintiff asserts that "[t]he relief Plaintiff asks against the State Bar of California is for the State of California to fund an investigative body as a

watch dog on the State Bar and to prosecute violations of Citizens rights. He is not, in essence, seeking monetary damages from the State Bar or its officials for himself." (Pl.'s Opp. to State Bar's Mem. at 3). This request for relief requires expenditures of public funds from the state treasury and is therefore prohibited by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Shaw v. State of California Department of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986). Even if the Court construed the claim as one for monetary relief solely from the State Bar, the Ninth Circuit has held that "[t]he Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies such as California's Bar Association and Bar Court." *Hirsh v. Justices of the Supreme Court of the State of California,* 67 F.3d 708, 714–15 (9th Cir. 1995).

## V. Defenses That Apply To All Remaining Defendants

### A. Plaintiff Cannot Establish A Pattern Of Racketeering As Required By RICO

■ Plaintiff's second cause of action is for alleged violations of RICO. Plaintiff asserts that Paul Gavin, as a professional corporation under the law of the State of California, constitutes an enterprise and that all other defendants:

> associated with the enterprise described above, did knowingly conduct and participate, directly and indirectly, the affairs of that enterprise which was engaged in, and the activities of which affected interstate and intrastate commerce via U.S. Mail (§ 1341) with illegal documents, wire fraud, through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), consisting of multiple acts of conversion, undue influence and bribery of California Superior Court judges. This criminal enterprise caused them to fail in their duty to enforce the Oath of Office and Judicial Cannons of Ethic and the laws of the State of California, obstruction of a

fair administration of justice, conversion, bribery, grand theft, perjury and conspiracy.

(Am.Compl.¶ 100).

Plaintiff states that this alleged violation has caused him "to lose a life time of work to accrue an estate of $925,000 that was free and clear of any debt and the American Dream. This damage entitles plaintiff to compensatory damages, treble damages and other civil remedies provided by the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 et. seq." (Am. Compl.¶ 32).

Plaintiff also filed a RICO case statement. The Court reviewed the Case statement and the Amended Complaint simultaneously and found them virtually identical.[8] Plaintiff did not use the RICO case statement to provide the Defendants and this Court with additional facts that were not asserted in his Amended Complaint.

■ To state a claim under RICO Plaintiff must demonstrate: (1) the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Sun Sav. and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). Because Plaintiff cannot establish a pattern of racketeering activity this cause of action must be dismissed with prejudice as to all defendants.

■ The identification of a pattern of racketeering activity "has proven a challenging task for courts." *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1535 (9th Cir.1992). At minimum, to show a pattern of racketeering activity Plaintiff must illustrate that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original). Racketeering predicates are related if they have "similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated."

---

8. Even though Plaintiff filed the RICO case statement before filing his Amended Complaint, this Court will assume that it was Plaintiff's intention that the RICO case statement also be considered as a supplement to his Amended Complaint.

*Sever,* 978 F.2d at 1535 (quoting 18 U.S.C. § 3575(e)). A Plaintiff establishes continuity by showing that the illegal conduct poses a threat of continued criminal activity. *Id.*

In *Sever,* a former employee of a timber company alleged that the defendant took retaliatory actions after he was critical of the company. Specifically, the Plaintiff alleged that he was fired and subsequently unable to find other work because the employer engaged in various acts to blacklist him from the industry. *Id.* at 1532. The Ninth Circuit held that the Plaintiff failed to allege a pattern of racketeering activity. *Id.* at 1535. The Ninth Circuit reasoned that the collective conduct of the employer had the single purpose of impoverishing the employee. The Ninth Circuit also explained that it was persuaded by the fact that there was but a single victim involved. Moreover, there was no suggestion that the defendants would continue their behavior after they successfully blacklisted the Plaintiff, nor was their any proof that the Defendants intended harm on anyone other than the Plaintiff. Thus the Ninth Circuit concluded that the predicate acts designed to bring about a single event, to a single person, did not pose a threat of continuity as required by RICO. *Id.* at 1535.

Similar to *Sever,* in this case Plaintiff alleges that the Defendants engaged in various activities, all with the single purpose of depriving him of a fair dissolution proceeding which caused an unfavorable result. Like *Sever,* the collective acts of the Defendants alleged in Plaintiff's RICO case statement and the Amended Complaint were for the single purpose of impoverishing Plaintiff, i.e., causing him to lose his estate. As in *Sever,* there is only one single victim involved, the Plaintiff. Additionally, just like *Sever,* once the Defendants successfully "took" Plaintiff's estate there was no need for any continued tampering. Plus there is no claim that the Defendants intended to harm anyone but Plaintiff. Accordingly, like the Ninth Circuit

in *Sever* this Court concludes that Plaintiff cannot establish a pattern of racketeering activity. *See also Medallion Television Enterprises v. SelecTV of California, Inc.,* 833 F.2d 1360 (9th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989) (holding that a broadcaster's misrepresentations that induced a Plaintiff to enter a joint venture did not constitute a pattern of racketeering activity, because the case involved a single victim and a single fraud which was complete once the joint venture acquired the broadcasting rights); *Jarvis v. Regan,* 833 F.2d 149, 152–53 (9th Cir.1987) (holding that the Plaintiff could not establish a pattern of racketeering by allegations that legal organizations committed three predicate acts of mail and wire fraud in obtaining a single federal grant to defray costs of opposing a ballet initiative).[9] Hence, because Plaintiff cannot establish a pattern of racketeering activity his RICO claim must be dismissed with prejudice for all Defendants. The dismissal is with prejudice because it is clear that the deficiencies in this cause of action cannot be cured by amendment. *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir. 1987); *Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296 (9th Cir.1990), *cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991). Under no set of facts can Plaintiff establish that the various acts designed to deprive him of his marital estate constitutes a pattern of racketeering activity.

■ This Court may dismiss this cause of action with prejudice as to Defendant Weedon even though he has not yet answered the complaint. *Yahya M.A. Omar v. Sea–Land Service, Inc.,* 813 F.2d 986 (9th Cir.1987); *Silverton v. Department of Treasury Etc.,* 644 F.2d 1341, 1345 (9th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). In *Silverton,* the Ninth Circuit held that "[a] District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where

---

9. Plaintiff's reliance on *Sun Sav. and Loan Ass'n v. Dierdorff,* 825 F.2d 187 (9th Cir.1987) is unavailing. In *Sun* the Plaintiff asserted that the president and chief executive officer of a savings and loan association solicited and received kickbacks from various customers. Even though the Plaintiff in *Sun* only cited to four predicated acts, because there were allegations of an ongoing scheme of receiving kickbacks and other favors from loan customers, the Plaintiff successfully established a pattern of racketeering. Conversely, the instant case involves one victim and one harm, and not an on going pattern of criminal behavior.

such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." 644 F.2d at 1345. In the instant case Defendant Weedon is in an identical position to all other moving defendants who claimed that Plaintiff cannot establish a pattern of racketeering activity. The claims against Fred Weedon are also integrally related because Plaintiff alleges that he and the other Defendants were involved in a conspiracy. Thus, as the Court has dismissed the RICO cause of action as to all Defendants with prejudice, a sua sponte dismissal of the cause of action as to Defendant Weedon is appropriate.

As further explained by the Ninth Circuit in *Omar*, a trial court may dismiss a claim sua sponte under FED. R. CIV. P. 12(b)(6) without notice when the claimant cannot possibly win relief. The Ninth Circuit suggested that a sua sponte dismissal is even more appropriate if the Plaintiff had an opportunity to litigate the issue. 813 F.2d at 991. In the instant case under no circumstances can Plaintiff state a RICO claim based on the alleged acts of the Defendants to deprive him of his marital estate. Moreover, in opposing the motions to dismiss brought by the seventeen other Defendants, Plaintiff had adequate notice and an opportunity to litigate the issue of whether he could state a claim under RICO. Therefore, this Court sua sponte dismisses Plaintiff's second cause of action as to Defendant Weedon.

**B. This Court Does Not Have Subject Matter Jurisdiction Over Plaintiff's Fourth Cause Of Action**

■ In Plaintiff's fourth cause of action he claims that as a result of the "unlawful and corrupt conduct of above [sic] mentioned enterprise, plaintiff was deprived of an impartial and fair trail, [sic] deprived of due process rights, and was a victim of discrimination." (Am.Compl.¶ 110). Plaintiff believes that but for the wrongful enterprise he would have prevailed and received one half of his estate of $925,000. He asserts that "[u]nder the principles of equity and California

Common Law, plaintiff is entitled to declaration that all judgments are void, receive full restitution of amounts paid to satisfy judgments, recovery of attorneys' fees and other litigation expenses incurred in the corrupt trials." (Am.Compl.¶ 111). Because Plaintiff's requested relief requires the Court to assess the validity of state court judgments, the claim is outside the Court's jurisdiction.

■ As the individual Defendants assert, federal courts are courts of limited subject matter jurisdiction. For example, " 'lower federal courts possess no power whatever to sit in direct review of state court decisions.' " *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (quoting *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). See also, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (holding that no court of the United States other than the Supreme Court can entertain a proceeding to reverse or modify a state judgment for errors.); *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir.1986) (stating that district courts have no authority to review the final decisions of state courts). Only the Supreme Court of the United States has subject matter jurisdiction to review a final judgment of a state court.[10] *Feldman*, 460 U.S. at 474, 103 S.Ct. 1303.

■ Under what has come to be known as the *Rooker–Feldman* doctrine, "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court [decision], then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303. The *Rooker–Feldman* bar is jurisdictional. *Worldwide Church of God*, 805 F.2d at 890–93. The doctrine prohibits federal court review of state judgments even when the challenge to the state court decision involves federal constitutional issues. *Feldman*, 460 U.S. at 484–86, 103 S.Ct. 1303; *Worldwide*

10. Pursuant to 28 U.S.C. § 1257, the United States Supreme Court has jurisdiction to review final judgments that are given by the highest court of the state.

*Church of God*, 805 F.2d at 891; *Robinson v. Ariyoshi*, ·753 F.2d 1468, 1472 (9th Cir.1985), *vacated on other grounds*, 477 U.S. 902; 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986).[11] Additionally, the *Rooker–Feldman* doctrine applies even when the state court judgment at issue is not final. *Worldwide Church of God*, 805 F.2d at 893 n. 3.

■ In short, the *Rooker–Feldman* doctrine bars federal litigation if, "there has already been actual consideration of and a decision on the issue presented ....·. If consideration . and decision have been accomplished action in federal court is an impermissible "appeal" from the state court judgment." *Robinson*, 753 F.2d at 1472 (citations omitted). *See also Worldwide Church of God*, 805 F.2d at 892 (quoting *Robinson*, 753 F.2d at 1472). Hence, because Plaintiff's fourth cause of action asks the Court to review and revise a state court judgment, the claim is outside this Court's jurisdiction.

While not binding precedent, the Fifth Circuit's holding in *Hale v. Harney*, 786 F.2d 688 (5th Cir.1986), also informs and supports the Court's conclusion.[12] In *Hale*, the Plaintiff sought to challenge· a divorce decree through an action in federal court in which he claimed that his former wife, her lawyer, and the state judge who rendered the decree conspired to violate his constitutional rights in the underlying state litigation. *Id.* at 689. The Fifth Circuit found that the Plaintiff's claims in the federal action were "inextricably intertwined" with the state court decree because much of the relief sought by the Plaintiff amounted to a modification of the decree. *Id.* at 690–91. The Fifth Circuit held that the Plaintiff's claims were barred by *Feldman* and explained that "litigants

may not obtain review of the state court's actions by filing complaints about those actions in lower federal courts in the form of civil rights suits." *Id.* at 691. The facts in the instant case are strikingly similar. As the Fifth Circuit concluded in *Hale*, this Court finds that it does not have jurisdiction to declare all state judgments void and may not award restitution, attorneys' fees, and costs. ·Thus, Plaintiff's fourth cause of action must be dismissed as to all Defendants with prejudice.[13] ·

**C. The Statute Of Limitations Bars Plaintiff's First And Third Causes Of Action**

■ In Plaintiff's first cause of action he claims that the Defendants violated his rights under the First, Fourth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments of the United States Constitution. Plaintiff's third cause of action is brought under 18 U.S.C. §§ 1985 & 1986. All of these claims are barred by the statute of limitations. · Because §§ 1983 & 1985 do not contain their own limitations period, federal courts look to the forum state's statute of limitations for personal injury torts. *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In California, the applicable statute provides for a limitations period ·of one year from the date the cause of action accrues. CAL. CIV. P. CODE § 340(3). Therefore, the one year statute of limitations governs claims brought under §§ 1983 & 1985. *McDougal v. County of Imperial*, 942 F.2d 668, 672–74 (9th Cir.1991). The statute of limitations for § 1986 is also one year. *Burnett v. Grattan*, 468 U.S. 42, 48, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

---

**11.** However, a district court does have jurisdiction over a "general" constitutional challenge that does not require review of a final state court decision in a particular case.· *Worldwide Church of God*, 805 F.2d at 891. *See also Feldman*, 460 U.S. at 482–86, 103 S.Ct. 1303; *Dubinka v. Judges of Sup. Ct. of Cal. for the County of Los Angeles*, 23 F.3d 218, 221 (9th Cir.1994). In the instant case, Plaintiff does not claim that he is making such a "general" constitutional challenge but specifically requests that the Court find the judgments null and void.

**12.** *Hale* was cited with approval. by the Ninth Circuit in *Worldwide Church of God*, 805 F.2d at 893, n. 3 & 4.·

**13.** While not mentioned by any Defendants, arguably the *Rooker–Feldman* doctrine bars Plaintiff's complaint in its entirety. A court could conclude that each of Plaintiff's four causes of action are inextricably intertwined with the state · court decree because much of the relief Plaintiff seeks requires a modification of various judgments entered against him by the state courts.

Federal law determines when a cause of action accrues. *Compton v. Ide,* 732 F.2d 1429, 1432 (9th Cir.1984). A cause of action generally accrues when a Plaintiff "knows or has reason to know of the injury which is the basis of his action." *McCoy v. San Francisco, City & County,* 14 F.3d 28, 29 (9th Cir.1994) (internal citations and quotations omitted).

The County's argument, in which all other Defendants join, is that Plaintiff's initial Complaint was filed on October 15, 1997, and that even with the most generous determination as to when his claims accrued the action is untimely. The County asserts that the last act of misconduct allegedly occurred on September 13, 1996. The Court has carefully reviewed the docket and the Amended Complaint. The County is incorrect in several respects. First, Plaintiff filed this Complaint on September 15, 1997, and not October 15, 1997. While Plaintiff filed a RICO case statement on October 15, 1997, this is considered an amendment to the original pleadings. LOCAL RULE 11.1. This amendment relates back to the date of the original because the information in the RICO case statement arose out of the same conduct, transaction and occurrence as set forth in the original pleading. FED. R. CIV. P. 15(c). Plaintiff then filed a first Amended Complaint on November 5, 1997, to add Etta C. Gillivan as a defendant. Assuming arguendo that the Amended Complaint would relate back to the original for all defendants, even newly added Etta C. Gillivan, the most favorable date for Plaintiff in the statute of limitations analysis is September 15, 1996. This is the date Plaintiff filed his original complaint.

After reviewing the Amended Complaint the Court concludes that the only act that supposedly occurred after September 15, 1996, happened on September 30, 1996. On September, 30, 1996, Judge Murphy signed an order that he explained and gave orally on September 13, 1996. But, at this hearing on September 13, 1996, Plaintiff objected to the Order that Judge Murphy instructed attorney Garrett to submit confirming his verbal instructions. In fact, Plaintiff contends that at the September 13, 1996, hearing Judge Murphy admitted both his bias and that the Order was wrong and illegal. (Am.Compl.¶ 78). As of September 13, 1996, Plaintiff was aware of all the alleged acts that he claims violated his constitutional rights and his causes of action began to accrue. Therefore, Plaintiff's first and third causes of action brought pursuant to §§ 1983, 1985, and 1986 are barred by the statute of limitations and must be dismissed with prejudice as to all defendants.

This Court is comfortable dismissing these claims with prejudice because it cannot conceive of any circumstance under which Plaintiff would be entitled to toll the statute of limitations, or request equitable tolling. The doctrine of equitable tolling only applies "occasionally and in special circumstances." *Addison v. State of California,* 21 Cal.3d 313, 316, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). In general the application of the doctrine requires timely notice, lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff. *Addison,* 21 Cal.3d at 316, 146 Cal.Rptr. 224, 578 P.2d 941. While Plaintiff fails to plead any grounds for tolling or equitable tolling the Court suspects that he would raise two arguments to support such a claim.

First, as to tolling, Plaintiff asserts in his Amended Complaint that he exhausted his state court remedies. The Court interprets this to mean that Plaintiff filed various complaints, appeals, and other actions in state court relating to the matter. In his Amended Complaint Plaintiff describes how he filed four appeals, wrote the presiding judge of San Diego Court, filed complaints with the California State Bar and went, "finally to the California Supreme Court with a verification of accusation about attorney Gavin. After two years he got a letter stating his request was denied." (Am.Compl.¶ 27). Plaintiff filed an action with the Supreme Court of California who refused to hear the case. He then filed for writ of certiorari to the United States Supreme Court which the Court denied on March 26, 1997. (Am. Compl.¶¶ 82–84). There is no exhaustion requirement for § 1983 complaints brought by non-prisoners thus tolling on such grounds would not be appropriate.

Moreover, affording Plaintiff leave to file a Second Amended Complaint to assert such facts as a basis for equitable tolling would be futile. First, Plaintiff has filed appeal after appeal, he has approached various agencies, administrative bodies, and courts to argue for relief. He obviously has an understanding of the legal system, and appreciates that various courts and agencies may be able to afford him relief. However, Plaintiff failed to file a claim in federal court in the midst of all the claims made to the United States Supreme Court, State Appellate Court, Supreme Court of California, the presiding judge of the San Diego Court, the Commission on Judicial performance, and the California State Bar. Plaintiff's own actions show he was capable of pursuing simultaneous remedies for alleged wrongs in various legal arenas. His failure to bring such claims at an earlier date in federal court is unreasonable and in bad faith. The Plaintiff is dangerously close if not an actual vexatious litigant, at least with respect to his dissolution of marriage. The Court does not understand what good reason he could have for failing to file his complaint in federal court in a timely fashion. The various individuals named in Plaintiff's Amended Complaint have been forced to defend themselves over and over again in various forums, to require them to do so yet again in federal court at this late hour would be highly prejudicial.

Second, Plaintiff could argue he is entitled to tolling with a claim that he did not discover his rights were violated until after September 15, 1996. The Court would not find this position persuasive. Distilled to its essence, Plaintiff's complaint is that he was mistreated and discriminated against during his divorce proceedings. In his Amended Complaint Plaintiff alleges the acts that violated his rights were open and obvious. For example, Plaintiff makes references to "the obvious conspiracies," (Am.Compl.¶ 71). He explains that the Judges were openly biased, for example he states that, "Judge Maino admitted on the record that he had biased himself." (Am.Compl.¶ 8). Plaintiff asserts that the attorneys allegedly involved in the conspiracy mistreated him because they cursed at him, lied to him, and did not provide him with needed information. (Am.

Compl.¶ 12). Plaintiff also argues that Judges would not enforce orders, (Am. Compl.¶ 14) and that Court personnel engaged in misconduct such as rewriting the transcript. (Am.Compl.¶ 38). The Court does not see how Plaintiff could not reasonably know of the facts that support his complaint. Tolling on these grounds would also be improper. Accordingly, this Court finds that Plaintiff's first and third causes of action are barred by the statute of limitations and must be dismissed with prejudice as to all defendants.

## VI. Even If Plaintiff Can Allege Facts To Support Tolling Or Equitable Tolling He Cannot State A Claim Against The County Of San Diego And Various Individuals Under §§ 1983, 1985, & 1986

### A. The County of San Diego

 Even if Plaintiff could plead facts for equitable tolling, his Amended Complaint would have to be dismissed for the remaining Defendants (the County and the Individuals) for a failure to state a claim on which relief could be granted. Under §§ 1983, 1985, and 1986, "[e]very person" who acts under color of state law may be sued. To state a claim against the County of San Diego he must first establish that the County is a person. In certain circumstances the term "person" has been interpreted broadly, even to include cities, counties, and other local government entities. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability. Thus, to the extent that Plaintiff's theory of relief is that County employees or agents violated his rights, his claim fails as a matter of law.

In his Opposition Plaintiff asserts his theory of recovery against the County is outlined in paragraphs 103 and 104 of his Amended Complaint which state in relevant part that:

(103) . . . .

All persons stand equal before the law, and are to be dealt with as equal in a court of justice. Every person has a right under

the Constitution; for the access to the court system, equal protection, right to be heard, to file papers, impartial trial, etc., with or without an attorney. A person or Class of persons should not be discriminated against because they can not afford an attorney or as in the plaintiff's case not allowed to have an attorney by the court and must act in propria persona against an attorney that is a friend of the court and before the judge every day. This is not equal access or equal protection of the court. This is bias and negligence by the court is invidiously discriminatory animus and violation of the Constitution and the laws of the United States. When a court of law neglects or refuses to prevent the wrong, and acts are done under the color of law of a state, and when State officials act within the limits of their lawful authority. But acts are also done "under color of law" when State Officials act outside the limits of their lawful authority while pretending to act in the performance of their official duties; it is a unlawful act for an official to abuse or misuse their powers. (104) There is an unwritten policy in the San Diego Superior Court of discrimination against any person filing a court action in propria persona. Thomas observed this when he was a bailiff. The clerks would reject pleadings without reading them and than [sic] say there got to be something wrong with them, because it was written by propria persona.

(Am.Compl.¶ 104).

 The essence of Plaintiff's charge is that the County has an unwritten custom of discriminating against pro per parties. Municipalities can be held liable for deprivations of constitutional rights resulting from their policies or customs. *Monell*, 436 U.S. at 691–93, 98 S.Ct. 2018; *Shaw v. California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir.1986). *See also Meyers v. Contra Costa County Dept. of Social Services*, 812 F.2d 1154 (9th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987). Locating a "policy" ensures that a municipality "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of

those officials whose acts may be fairly said to be those of the municipality." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. Moreover, given Plaintiff's allegations that there is an unwritten unofficial policy of discrimination pursuant to a "custom," to subject the County to liability he must show that the relevant practice is so widespread as to have the force of law. *Id.* at 691, 98 S.Ct. 2018 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

In addition, Plaintiff must demonstrate an affirmative link between his deprivation and "the adoption of [a] plan or policy by [the supervisors]—express or otherwise—showing their authorization or approval of such misconduct." *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369–70 (9th Cir.1986) (quoting *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). More specifically:

> It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality ... [t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights.

*Board of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

As currently drafted, Plaintiff's Amended Complaint is completely devoid of any facts supporting his conclusion that there is a widespread custom that the San Diego Superior Court discriminates against pro per Plaintiffs. Nor has Plaintiff clearly and concisely plead facts to show that the municipality acted deliberately resulting in harm. Therefore, even if not barred by the statute of limitations, Plaintiff's Amended Complaint against the County for violations of his civil rights would be dismissed for failure to state a claim upon which relief can be granted.

## B. The Individuals

Individuals and private entities are not normally liable for violations of most rights secured by the United States Constitution. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). To maintain a cause of action based on an allegation of constitutional violations, a Plaintiff must show that the actions complained of are "fairly attributable" to the government. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *see also Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 567 (9th Cir. 1987).

"Action taken by private Individuals may be 'under color of state law' where there is 'significant' state involvement in the action." *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir.1983). Although § 1983's under-color-of-state-law requirement is technically separate from the Fourteenth Amendment's state-action requirement, the two inquiries are closely related. *Collins v. Womancare*, 878 F.2d 1145, 1148 (9th Cir.1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990). The Supreme Court has articulated four distinct tests for determining whether the actions of a private individual amount to state action, these are: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Id.* at 1148–49; *see also George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997). The joint action and governmental nexus test are relevant in the instant case.

The theory behind the joint action test is that private persons act together with state officials under the color of law. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Under this test "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Collins*, 878 F.2d 1145, 1150 (9th Cir.1989). Courts find that individuals act in concert if there is a "substantial degree of cooperative action" between the state and private actor that results in the deprivation of rights. *Id.* Additionally, private parties are found liable under § 1983 if the state and private actors "share a common, unconstitutional goal." *Id.* (citing *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir.1991)). Joint action can be demonstrated by the existence of a conspiracy. *Collins*, 878 F.2d at 1154; *see also Dennis*, 449 U.S. at 27–28, 101 S.Ct. 183 (finding that private actors who successfully conspired to bribe judges were liable as state actors under § 1983 despite judicial immunity). "The core question is 'whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity.'" *National Coalition Government of the Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D.Cal.1997) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). Indeed "merely resorting to the courts and being on the winning side of lawsuit does not make a [private] party a joint actor with the judge." *Dennis*, 449 U.S. at 27–29, 101 S.Ct. 183.

While Plaintiff makes general allegations of bribery and conspiracy they are conclusory and fall far short of stating a cause of action. Plaintiff does not delineate for the Court how each Defendant was directly involved and participated in the conspiracy. Such specificity is necessary for Plaintiff to show that each individual so cooperated with the Judges as to come under the color of state law. The only individuals (other than Judges) that Plaintiff even directly mentions are attorneys Gavin and Guillotti. Plaintiff does not explain how his ex-wife Ellen Ricotta and Roy Garrett were involved in the conspiracies, bribery, and other alleged wrongs.

Under the governmental nexus test the Court considers whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Again, as Plaintiff makes only conclusory

accusations and fails to specifically delineate how each individual was involved in the alleged conspiracy, if not barred by the statute of limitations this cause of action would be dismissed for a failure to state a claim upon which relief can be granted.

## VII. The Individual Defendants' Request For A Finding Of Contempt

### A. Background

Defense counsel for the Individuals filed an ex parte application for an order to show cause why Plaintiff and his suspected ghost-writing attorney should not be held in contempt of court. This Court issued an order to show cause and has received memorandums of points and authorities and declarations from defense counsel, Plaintiff, and the alleged ghost-writing attorney Lois Brown Kelly.

Defense counsel asserts that when it reviewed Plaintiff's opposition to the Defendant's motion to dismiss it became apparent that he had received the assistance of counsel. Defense counsel based this suspicion, "on the glaring difference in writing style and content as between the "Statement of Facts" and the legal arguments and analysis set forth in the oppositions." (Decl. Murphy ¶ 3). Defense counsel explains that "the 'Statement of Facts' contained the same disjointed and somewhat histrionic writing style of Mr. Ricotta's various complaints. Conversely, the legal arguments appeared cogent, cohesive and displayed a comprehension of legal issues and theory endemic to experienced attorneys." (Decl. Murphy ¶ 4). As a result, Defense counsel contacted Lois Brown Kelly who immediately responded that she was familiar with the case. She admitted that she assisted Plaintiff in researching and writing his memorandums. She denied writing either the entire opposition or the Amended Complaint. (Decl. Murphy ¶ 3).

Ms. Kelly submitted a declaration explaining that she is an active member of the California State Bar. She admitted that while she did not author any pleadings in the lawsuit,

I had, with regard to the motion to dismiss only, done some legal research and prepared a rough draft a portion of the memorandum of points and authorities in opposition to the motion. In so doing I acted in the capacity of a law clerk only, performing a personal favor at the request of Mr. Ricotta. At the time I submitted my work to Ricotta I told him it was a rough draft only, and that I was not willing to edit nor even to review his final product.

(Decl. Kelly ¶ 4).

Ms. Kelly explained that she played no role in drafting the Complaint, and summarized her involvement as, "other than my very limited research and draftsmanship on a portion of the memorandum of points and authorities in opposition to the motion to dismiss I have had no involvement whatsoever in the instant action. Mr. Ricotta has neither sought nor have I given any advice or counsel with regard to the action." (Decl. Kelly ¶ 6). Ms. Kelly said that she had no intention to either mislead counsel or this Court, or violate any rules governing the activities of attorneys. (Decl. Kelly ¶ 6). At oral argument Defense counsel for the Individuals offered his estimate that Mrs. Kelly drafted all of the legal standard and argument sections in Plaintiff's various motions in opposition to the Defendants' motions to dismiss.

### B. The History Of Ghost–Writing

The issue of whether an attorney who ghost-writes for a Plaintiff can be held in contempt is one of first impression in the Ninth Circuit. In fact, there are only three reported cases in which courts have directly tackled this question. *Ellis v. State of Maine,* 448 F.2d 1325 (1st Cir.1971); *Johnson v. Board of County Comm'rs for County of Fremont,* 868 F.Supp. 1226 (D.Colo.1994); *aff'd in part and disapproved in part,* 85 F.3d 489 (10th Cir.1996), *cert. denied sub nom, Greer v. Kane,* — U.S. —, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996); *Laremont–Lopez v. Southeastern Tidewater Opportunity Center,* 968 F.Supp. 1075, 1077 (E.D.Va. 1997).

Beginning in 1971, the First Circuit with "an eye on the future," explained its concern about the problems of pro se Plaintiffs appearing before courts asserting compete ig-

norance of the law and then presenting a brief that was "manifestly written by someone with some legal knowledge." *Ellis*, 448 F.2d at 1328. The court explained its fear, "that in some cases actual members of the bar represent petitioners, informally or otherwise, and prepare briefs for them which the assisting lawyers do not sign, and thus escape the obligation imposed on members of the bar, typified by F.R.C.P. 11 ...." *Id.* The court went on to state that "we cannot approve of such a practice. If a brief is prepared in any substantial part by a member of the bar, it must be signed by him [her]." *Id.* (emphasis added).

In 1994, a District Court in Colorado addressed this issue and concluded that even if it found it inappropriate conduct for an attorney to ghost-write for a pro se party, the lack of clearly defined rules prohibiting such a practice rendered sanctions inappropriate. *Johnson*, 868 F.Supp. at 1232. In *Johnson* the Plaintiff admitted that documents he filed with the court, although signed by him, were drafted by an attorney. The court explained that ghost-writing raised three areas of concern. First, the court described the standard practice of federal courts is to interpret filings by pro se litigants liberally and to afford greater latitude as a matter of judicial discretion. The court felt that allowing a pro se litigant to receive such latitude in addition to assistance from an attorney would disadvantage the nonoffending party. *Id.* at 1231. Second, the court explained that ghost-writing is a deliberate evasion of the responsibilities imposed on counsel by FED. R. CIV. P. 11. Rule 11 obligates members of the bar to sign all documents submitted to the court, to personally represent that there are grounds to support the assertions made in each filing. *Id.*

Third, the court explained that such behavior implicated the Rules of Professional Responsibility, specifically the ABA's Model Code of Responsibility DR I–102(A)(4), providing that an attorney should not engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Additionally, the court asserted that "[h]aving a litigant appear to be pro se when in truth an attorney is authoring pleadings and necessarily guiding the course of the litigation with an unseen hand

is ingenuous to say the least; it is far below the level of candor which must be met by members of the bar." *Id.* at 1231.

Finally the court articulated that "[a] Judge is constrained by Canon 3 of the Code of Conduct for the United States Judges to initiate appropriate action when he or she becomes aware of the likelihood of unprofessional conduct by lawyers." *Id.* at 1232. The Judge held that publishing a memorandum was sufficiently appropriate action since:

> I am confident that none of the offending conduct referred to was thought of as such by the lawyer or lawyers involved. Further the rules of Professional Conduct adopted by the Colorado Supreme Court and perforce [sic] by this court as well as existing ethics opinions of the Colorado Bar Association have not given adequate attention to the ethical considerations implicit in the practice of ghost-writing.

*Id.* at 1232.

In 1997, a District Court in Virginia was faced with a plaintiff appearing pro se who had an attorney ghost-write his complaint. Similar to the reasoning in *Johnson*, the court held that ghost-writing unfairly exploits the mandate that pleadings of pro se litigants be held to a less stringent standard than pleadings drafted by lawyers, as well as nullified the certification requirement of FED. R. CIV. P. 11, and circumvented the local rules concerning the withdrawal of attorneys. *Laremont–Lopez*, 968 F.Supp. at 1077. The court recognized, however, that there was no specific rule prohibiting ghost-writing and concluded that:

> [w]hile the Court believes that the attorneys should have known that this practice was improper, there is no specific rule which deals with such ghost writing. Therefore the Court FINDS that there is insufficient evidence to find that the Attorneys knowingly and intentionally violated its Rules. In the absence of such intentional wrongdoing, the Court FINDS that disciplinary proceedings and contempt sanctions are unwarranted.

*Id.* at 1079.

### C. Analysis

 The threshold issue that this Court must address is what amount of aid consti-

tutes ghost-writing. Ms. Kelly contends that she acted as a "law-clerk" and provided a draft of sections of the memorandum and assisted Plaintiff in research. Implicit in the three opinions addressing the issue of ghost-writing, is the observation that an attorney must play a substantial role in the litigation. For example, in *Ellis*, the Court stated that its concern was directed at petitions that were "manifestly written" by someone with some legal knowledge and briefs that were prepared in "any substantial way" by a member of the Bar. 448 F.2d at 1328.

In *Johnson*, the ghost-writing attorney in question drafted the documents entirely. The Court asserted that it was concerned with attorneys who "authored pleadings and necessarily guided the course of the litigation with an unseen hand." 868 F.Supp. at 1231. Finally, in *Laremont* the allegations were that the Plaintiff actually paid attorneys who secretly drafted the complaints, tried to resolve the dispute, and paid the court filing fees out of their law firm's account. *Id.*

 In light of these opinions, in addition to this Court's basic common sense, it is this Court's opinion that a licensed attorney does not violate procedural, substantive, and professional rules of a federal court by lending some assistance to friends, family members, and others with whom he or she may want to share specialized knowledge. Otherwise, virtually every attorney licensed to practice would be eligible for contempt proceedings. Attorneys cross the line, however, when they gather and anonymously present legal arguments, with the actual or constructive knowledge that the work will be presented in some similar form in a motion before the Court. With such participation the attorney guides the course of litigation while standing in the shadows of the Courthouse door. This conclusion is further supported by the ABA Informal Opinion of 1978 that "extensive undisclosed participation by a lawyer ... that permits the litigant falsely to appear as being without substantial professional assistance is improper." ABA Informal Opinion (1978) (quoted in Elizabeth, J. Cohen, *Afraid of Ghosts: Lawyers May Face Real Trouble When they 'Sort of' Represent Someone*, 80 ABA JOURNAL (Dec.1997)).

In the instant case it appears to the Court that Ms. Kelly was involved in drafting seventy-five to one hundred percent of Plaintiff's legal arguments in his oppositions to the Defendants' motions to dismiss. The Court believes that this assistance is more than informal advice to a friend or family member and amounts to unprofessional conduct.

 However, even though Ms. Kelly's behavior was improper this Court is not comfortable with the conclusion that holding her and/or Plaintiff in contempt is appropriate. The courts in *Johnson* and *Laremont* explained that because there were no specific rules dealing with ghost-writing, and given that it was only recently addressed by various courts and bar associations, there was insufficient evidence to find intentional wrongdoing that warranted contempt sanctions.

This Court is persuaded by such reasoning and finds that the circumstances justifying such a conclusion have yet to change. The parties were unable to point the Court to any local, state or national rule addressing ghost-writing. By no means does this Court condone unprofessional conduct. This Court strongly believes that professional rules of conduct are extremely necessary, and are often both too lenient in substance and under enforced. But, the facts of this case are not nearly egregious enough for this Court to take the unprecedented step of holding an attorney and a pro se party in contempt for giving and receiving assistance in the drafting of documents. There is nothing in the record to indicate that Ms. Kelly thought her behavior was offensive and improper, and it is clear that she had no intention to mislead or harm this Court and the other parties involved. Quite the contrary she was quick to admit the nature and extent of her involvement.

Further, like the Court in *Johnson* this Court believes that per the requirement of the Code of Judicial Ethics, this Opinion is sufficient because it admonishes the attorney that her behavior is questionable, despite the failure of the professional rules of conduct and local court rules to provide clear guidelines on the subject. This case illustrates the

need for local courts and professional bar associations to directly address the issue of ghost-writing and delineate what behavior is and is not appropriate. The issue is not only interesting and complex, but surely touches and concerns all attorneys currently practicing law in this Country.

Thus, for the foregoing reasons this Court denies the Individual Defendants' motion for holding the Plaintiff and/or Lois Brown Kelly in contempt of court.

## VIII. Weedon's Request To Set Aside The Entry Of Default

On January 5, 1998, the Clerk of the Court entered default against Defendant Weedon. Weedon moves to set aside this default on the grounds of a good faith mistake, and the existence of a meritorious defense. Federal Rule of Civil Procedure 55 provides that a court may set aside entry of default for "good cause shown." The "good cause" that must be shown is essentially the same as that for setting aside a default judgment under FED. R. CIV. P. 60(b). *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir.1986) ("when considering a motion to set aside a default entry, the parallels between granting relief from a default entry and a default judgment encourage utilizing the list of grounds for relief provided in Rule 60(b)"). The Court considers the following factors in determining whether to set aside an entry of default: (1) whether the moving party was willful or culpable in the default; (2) whether the non-moving party would be prejudiced if entry of default is set aside; and (3) whether the moving party has a meritorious defense. *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987); *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir.1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995). The standards for setting aside an entry of default, however, are less rigorous than those for setting aside default judgment. *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945–46 (9th Cir.1986) ("Where timely relief is sought from a default ... and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside

the [default] so that cases may be decided on their merits."). "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Id.* at 945.

The Court finds that Weedon has timely sought relief from the default, has not acted willfully or with any culpable intent, and has several meritorious defenses. This Court also finds that Plaintiff will not be prejudiced by an Order setting aside the entry of default. First, as set forth in the Declaration submitted by Matthew Murphy, counsel for Weedon, Murphy contacted the Clerk's Office the first working day after Weedon received a copy of the entry of default. At this time Murphy believed that Weedon had filed a timely notice of appearance. As soon as the Clerk's Office informed Mr. Murphy that Weedon's notice of appearance was three days late, and that the entry of default was correct, Murphy immediately scheduled a motion to set aside default. (Murphy Decl. ¶¶ 3–9). Thus, Weedon has filed a timely request to set aside the entry of default.

Moreover, there is no evidence of any evil intent or bad faith. There are a number of defendants involved in this case, and each were served on various dates. Several of these Defendants are represented by Murphy. As Murphy sets forth in his declaration, he was referred to Weedon by another client and some confusion resulted as to the proper date to answer the Amended Complaint. Therefore, there is good cause for the miscommunications and resulting mistake in filing a notice of appearance. Second, given Weedon's good faith efforts to answer the complaint in a timely fashion, and Weedon's immediate attempts to clarify and set aside the entry of default, Plaintiff was promptly notified of Weedon's intent to defend this action. Accordingly Plaintiff will not suffer prejudice by an Order setting aside the entry default which allows the Court to consider the Complaint on the merits.

Third, Weedon has meritorious defenses which necessitate a dismissal of all causes of actions in which he is named as a Defendant. As discussed extensively *supra* at

980–982, Plaintiff's first and third causes of action are barred by the statute of limitations. Plaintiff's second cause of action for RICO violations must also be dismissed because he cannot establish a pattern of racketeering activity. *See* discussion *supra* at 977–979. Finally, this Court does not have jurisdiction to afford Plaintiff the relief he seeks in his fourth cause of action. As discussed *supra* at 968, n. 6 and 979, this Court can raise and consider these arguments for Weedon sua sponte. Thus, Weedon can successfully defend himself against this suit. Therefore, as required by the Ninth Circuit this Court resolves any doubt in favor of Weedon and GRANTS his request to set aside the entry of default. *Mendoza,* 783 F.2d at 945.

### VIX. Conclusion

For the reasons set forth above this Court:

1) DISMISSES with PREJUDICE Plaintiff's first and third causes of action as to all Defendants for lack of subject matter jurisdiction.

2) DISMISSES with PREJUDICE Plaintiff's second cause of action for RICO violations as to all Defendants for failure to state a claim.

3) DISMISSES with PREJUDICE Plaintiff's fourth cause of action for equitable relief as to all Defendants, because the requested relief is beyond this Court's subject matter jurisdiction.

4) GRANTS Defendant Weedon's request to set aside the entry of default.

5) DENIES the Individual Defendants' request for finding Plaintiff and Lois Brown Kelly in contempt of court.

6) DIRECTS the Clerk of the Court to close this case file in its entirety.

IT IS SO ORDERED.